STONA FITCH & another[1] *vs.* BOARD OF APPEALS OF CONCORD & another.[2]

No. 00-P-1711.

Middlesex. May 7, 2002. - September 6, 2002.

Present: LENK, KASS, & McHUGH, JJ.

*Building Permit. Zoning,* Building permit, Building inspector, Enforcement, Judicial review, Validity of by-law or ordinance, Lot size. *Declaratory Relief. Practice, Civil,* Declaratory proceeding.

The judge in a zoning enforcement action erred in dismissing as premature the plaintiffs' complaint, where the plaintiffs complied with all the requirements of G. L. c. 40A, §§ 7, 8, 15, and 17. [750-753]

The judge in a zoning enforcement action erred in denying the plaintiffs' motion to amend their complaint to seek declaratory relief under G. L. c. 231A, where the plaintiffs had an actual controversy with a building commissioner over whether he violated the zoning law in granting a building permit, despite the expiration of the permit while the case was moving through administrative and judicial channels. [753]

This court remanded to the Land Court the question whether the plaintiffs in a zoning enforcement action could use G. L. c. 240, § 14A, to petition the Land Court for a decision concerning the application of a provision of a town's zoning by-law to land that the plaintiffs did not own. [753-754]

This court did not reach the substantive issue in a zoning enforcement action, where the parties had not briefed the issue. [754-755]

CIVIL ACTION commenced in the Land Court Department on October 12, 1999.

The case was heard by *Leon J. Lombardi,* J., on a motion for summary judgment.

*Mark Bobrowski* for the plaintiffs.

KASS, J. Stona Fitch and Thomas Cote filed an appeal under G. L. c. 40A, § 17, in the Land Court, from a decision of the Board of Appeals of Concord (board) that had validated a build-

---

[1]Thomas Cote.
[2]Bessie Adele Cavanagh.

ing permit for the construction of a single-family house on land adjoining theirs. A judge of the Land Court dismissed their action on the ground that it was not ripe. We reverse.

1. *Facts.* The judge decided the case on a motion for summary judgment. These are the material and undisputed facts. Bessie Adele Cavanagh owns a vacant parcel of land at 188 Central Street, Concord (locus), that contains 10,513 square feet and has frontage of 75.5 feet. The required frontage for a "buildable lot" in the zoning district (residence C) in which the locus is situated is 80 feet; thus, the frontage of the locus is 4.5 feet shy.

Adjoining the locus, along a common rear lot line, Cavanagh owned a lot with 67.80 feet of frontage on Main Street. On that lot was a single-family house, lawful as a nonconforming use, in which Cavanagh resided.[3] The locus and the adjoining lot on Main Street have been in common ownership since 1930.

On April 7, 1999, the building commissioner of Concord issued to Cavanagh a permit to build a single-family house on the locus. In doing so, the building commissioner relied on a proceeding in 1998 before the board that had involved the locus. At that time, Cavanagh had asked the board for a variance or, in the alternative, a special permit to use the locus as a single-family residence lot. The board had denied relief to Cavanagh on the ground that it was not necessary. The locus, the board wrote in its decision, was "grandfathered" and "only the most pedantic and unimaginative zoning board could view the matter otherwise." The board advised the building commissioner to "be mindful of the [b]oard's position on this matter. If Applicant requests a building permit for the lot on Central Street, it should not be denied on the grounds that it is not a grandfathered building lot."

By letter dated June 3, 1999, Fitch and Cote, through counsel, conformably with G. L. c. 40A, § 7, wrote to the building commissioner, in his capacity as zoning enforcement officer, requesting him to enforce the zoning by-law of Concord by rescinding

---

[3]The house on the undersized lot was a nonconforming use because it existed prior to the coming into being of the zoning regulation that prohibited a house on a lot with less than 80 feet of frontage. *Mendes* v. *Board of Appeals of Barnstable*, 28 Mass. App. Ct. 527, 529-530 (1990).

the building permit. Within twelve days — on June 15 — the building commissioner responded in writing, as the statute requires, that he declined to act on the Fitch/Cote request. See and compare *Elio* v. *Zoning Board of Appeals of Barnstable*, *ante* 424 (2002). From the building commissioner's action, Fitch and Cote filed a timely appeal with the board on July 9, 1999. See G. L. c. 40A, §§ 8, 15. Following a hearing on the Fitch/Cote appeal, the board, on September 22, 1999, denied relief, citing its decision in 1998 that the locus was a lot on which a single-family house could lawfully be built. From that decision, Fitch and Cote on October 12, 1999, filed a timely appeal seeking judicial review in the Land Court. See G. L. c. 40A, § 17. At the time the motion for summary judgment was argued before the Land Court on September 6, 2000, Cavanagh's building permit had expired.[4]

2. *Discussion.* a. *The request for enforcement.* As we understand the decision of the Land Court judge, his reason for dismissing the complaint was that it was premature: no construction had begun under the building permit that Fitch and Cote wanted to have declared unlawful. He faulted the plaintiffs for not appealing from the issuance of the permit and wrote that the plaintiffs "cannot use the enforcement request route as a collateral attack on the 1999 permit itself." The judge also treated as consequential that the permit had lapsed. We are of opinion that the plaintiffs were entitled to adjudication of their appeal on the basis of the applicable statutory language, the decisional law, and sound public policy.

Section 7 of c. 40A of the General Laws, as amended by St. 1986, c. 557, § 55, provides:

> "If the officer . . . charged with enforcement of zoning . . . by-laws is requested in writing to enforce such . . . by-laws against any person allegedly in violation of the same and such officer . . . declines to act, he

---

[4]Under 780 Code Mass. Regs. § 111.8 (1998), "[a]ny permit issued shall be deemed abandoned and invalid unless the work authorized by it shall have commenced within six months after its issuance," unless the building commissioner, for cause, has granted a six-month extension. As the permit was issued April 7, 1999, it expired October 7, 1999, five days before the plaintiffs' action was filed in the Land Court.

shall notify, in writing, the party requesting such enforcement of any action or refusal to act, and the reasons therefor, within fourteen days of receipt of such request."

General Laws c. 40A, § 8, as inserted by St. 1975, c. 808, § 3. authorizes an appeal to the "permit granting authority" — in this case the board — by any person aggrieved by inability to obtain enforcement action. A party has thirty days from the date of the order by which that party is aggrieved to take its appeal to the permit granting authority. G. L. c. 40A, § 15. If aggrieved by the action of the permit granting authority, as the plaintiffs here were, G. L. c. 40A, § 17, authorizes the filing of an action within twenty days after the decision has been filed in the office of the town clerk. All those steps Fitch and Cote followed faithfully within the prescribed time limits. Compare *Elio* v. *Zoning Board of Appeals of Barnstable, supra.*

On the basis of the plain language of the statutes, Fitch and Cote were entitled to adjudication of the appeal under G. L. c. 40A, § 17. That entitlement was explicated in *Vokes* v. *Avery W. Lovell, Inc.,* 18 Mass. App. Ct. 471, 480-483 (1984). We observed there that the request for enforcement procedure was independent of the right to take an appeal under G. L. c. 40A, § 15, within thirty days of the issuance of a permit. That was so because there is no public notice of the issuance of a building permit. If a § 15 appeal were the sole remedy for a party aggrieved, the recipient of a permit could keep the permit under wraps for thirty days and then would have succeeded in foreclosing any challenge. *Id.* at 482 n.17.

For that reason, the Legislature adopted the enforcement procedure that appears in G. L. c. 40A, § 7. That procedure provides an alternative means "to stop allegedly unlawful construction from going forward under color of" the challenged permit. *Vokes* v. *Avery W. Lovell, Inc., supra* at 483. Although some construction had begun in the *Vokes* case by the time the § 7 enforcement mechanism was invoked, use of § 7 before construction has begun is not an impermissible preemptive strike; it is precisely what the Legislature appears to have anticipated and determined to enable. In its "1972 Report on

Zoning in Massachusetts/Proposed Changes and Additions to the Zoning Enabling Act Chapter 40A," the Department of Community Affairs stated that enforcing zoning requirements, especially dimensional regulations, "after construction has begun or in some cases, proceeded to completion, is uneconomical for both the developer and the community." 1972 House Doc. No. 5009, at 56.[5] If a requesting party is aggrieved by the administrative official's decision, it has "a right to seek administrative relief from the board under G. L. c. 40A, §§ 8 and 15, and, after exhausting administrative remedies, a right to obtain judicial review pursuant to G. L. c. 40A, § 17." *Vokes* v. *Avery W. Lovell, Inc., supra* at 482-483. See *Green* v. *Board of Appeals of Provincetown*, 404 Mass. 571, 574 (1989).

The case before us illustrates the utility of the procedure that the 1972 Report recommended and which found its way into G. L. c. 40A, §§ 7, 8, 15, and 17. Fitch and Cote have made entirely plain by their statutory enforcement request, petition for relief to the board, and complaint for judicial review that they oppose the designation and use of the locus as a buildable lot on the ground that, as matter of law, it is not. Cavanagh, by her earlier applications to the board and by her taking out a building permit, has manifested that she desires to build a house on the locus and has been told by the board that she can do so. Reasonably, Cavanagh did not persevere with construction in the face of proceedings to have such construction declared unlawful. It would be wasteful for Cavanagh, or anyone similarly situated, to hire a contractor and have that contractor do some initial construction just so that the validity of her permit could be contested.[6] Reciprocally, it would impose an unreasonable burden on persons aggrieved by the issuance of a

---

[5] That report established some of the ground for the comprehensive revision of the State zoning act effected by St. 1975, c. 808, § 3. The Department of Community Affairs is now known as the Department of Housing and Community Development. See St. 1996, c. 204, § 15.

[6] We may assume that the land owner found it necessary to have some building plans prepared in order to obtain a building permit, although for purposes of testing a zoning question, less than a complete set of contract drawings can be sufficient.

building permit, as Fitch and Cote are, to keep constant watch whether any construction is starting on the location in question.[7]

Here, the parties made known their positions through all the administrative steps prior to filing for judicial review. Contrast *Neuhaus* v. *Building Inspector of Marlborough,* 11 Mass. App. Ct. 230 (1981). It would be a reproach to justice to refuse to answer the issue they have placed before the court and to send them back to "Go" on the game board, there to begin, all over again the laborious and expensive process of seeking enforcement, going to the board, and filing a new complaint in a court.

b. *Declaratory judgment.* With the assent of the parties, the plaintiffs moved to amend their complaint to seek declaratory relief under G. L. c. 231A. The motion to amend was denied on grounds of futility, namely that there was no actual controversy. The genuine dispute about whether the locus is a grandfathered lot did not evaporate because Cavanagh's building permit had expired. The time consumed in administrative process and getting to a decisive point in judicial review of the decision of a board of appeal will generally exceed the six months that limit the life of a building permit. Yet two citizens have asserted their view that an enforcing official has violated the zoning law. The official, with the endorsement of the board, says the contrary. That is a controversy between them. See *Woods* v. *Newton,* 349 Mass. 373, 378-379 (1965). See also *Noonan* v. *Moulton,* 348 Mass. 633, 637 (1965); *Stow* v. *Pugsley,* 349 Mass. 329, 331 (1965). The motion to amend the complaint to add a prayer for a declaratory judgment should have been allowed.

c. *Petition under G. L. c. 240, § 14A.* The plaintiffs' assented to motion to amend their complaint also sought to obtain a decision under G. L. c. 240, § 14A, as to the lawfulness of Cavanagh's right to build on the locus. The cases have described that statute "as intended to permit any landowner to petition for a decision concerning the validity or invalidity of any zoning restriction applicable to his land." *Sturges* v. *Chilmark,* 380 Mass. 246, 249 (1980). *Mastriani* v. *Building Inspector of Monson,* 18 Mass. App. Ct. 989, 990 (1985). A landowner may

---

[7]This is not a case of a landowner being compelled to defend a hypothetical right to build. It was Cavanaugh who triggered the controversy by applying for and obtaining a building permit.

also petition under § 14A concerning land other than his own in the limited circumstances where the proposed use on that other land has a direct effect on his. *Harrison* v. *Braintree,* 355 Mass. 651, 654-655 (1969). *Mastriani* v. *Building Inspector of Monson, supra.* While it is likely that Fitch and Cote would be adversely affected by construction of a building on the locus, which they abut, we do not assume that fact and leave its determination, if necessary, to the Land Court on remand.

d. *Whether the locus is a buildable lot.* General Laws c. 40A, § 6, " 'grandfathers' once buildable lots held in separate ownership at the time a zoning change resulted in a particular parcel losing its status as a valid residential lot." *Preston* v. *Board of Appeals of Hull,* 51 Mass. App. Ct. 236, 239 (2001), and cases there cited, particularly, *Adamowicz* v. *Ipswich,* 395 Mass. 757, 764 (1985). In this case, the two lots — the locus and the Main Street lot — as noted, share a common rear lot line, i.e., the lots back up against each other. They have been owned together since 1930, well before the town adopted the eighty-foot minimum frontage requirement in 1950.

Section 6, fourth par., reads as follows:

> "Any increase in area, frontage, width, yard, or depth requirements of a zoning ordinance or by-law shall not apply to a lot for single and two-family residential use which at the time of recording or endorsement, whichever occurs sooner was not held in common ownership with any adjoining land, conformed to the then existing requirements and had less than the proposed requirement but at least five thousand square feet of area and fifty feet of frontage."

The design of G. L. c. 40A, § 6, is to permit the use of lots that were once lawful and cannot be made compliant with subsequently adopted zoning code requirements by adding adjoining land of the owner. See *Sturges* v. *Chilmark, supra* at 261.

Assume that rather than owning lots that back up against each other, Cavanagh owned a lot adjoining the locus with seventy feet of frontage on the same street, Central Street. On those hypothetical facts, she would be obliged to treat the two lots as merged because the frontage of the second lot when

added to the first produces a parcel of land that is compliant with the Concord by-law's requirement of a minimum of eighty feet of frontage. See *Preston* v. *Board of Appeals of Hull, supra* at 238-243. Does the case stand differently if, as here, the dimensional deficiency of the locus cannot be cured, or made less nonconforming, see *Planning Bd. of Norwell* v. *Serena,* 27 Mass. App. Ct. 689, 690-691 (1989), *S.C.,* 406 Mass. 1008 (1990), by merging it with the adjoining lot? Cf. *Sturges* v. *Chilmark, supra.* Or is it conclusive that, read literally, the statute does not confer grandfather status on any lot owned in common with an adjoining lot at the time the limiting zoning provision was adopted? These questions have not been briefed by any of the parties. We, therefore, do not decide the substantive issue.

The judgment of dismissal is reversed; the case is remanded to the Land Court for further proceedings on the merits.

*So ordered.*