Kathleen C. Gallivan vs. Zoning Board of Appeals of Wellesley & others.[1]

No. 07-P-355.

Suffolk. January 3, 2008. - June 2, 2008.

Present: Duffly, Grasso, & Cowin, JJ.[2]

*Zoning,* By-law, Setback, Building permit. *Practice, Civil,* Zoning appeal, Action in nature of mandamus. *Mandamus.*

This court concluded that a party with adequate notice of an order or decision that violates a zoning provision must appeal that order or decision to the appropriate permit-granting authority within the thirty-day period allotted for such an appeal under G. L. c. 40A, § 15, and cannot lawfully bypass that remedy and subsequently litigate the question by means of a request for enforcement under G. L. c. 40A, § 7 [853-858]; accordingly, a Land Court judge properly dismissed for lack of jurisdiction the plaintiff's appeal from an adverse decision of a town's zoning board of appeals (board), with respect to the plaintiff's request for enforcement of a by-law setback requirement against an abutting landowner, where a notice disclosing the filing of an application for the relevant building permit was sufficient to place on the plaintiff a duty of inquiry and gave her a reasonable opportunity to appeal the issuance of the permit to the board within thirty days, which she failed to do [858-860].

This court declined to award attorney's fees in a zoning dispute where the plaintiff's appeal, while not successful, was far from frivolous. [860]

CIVIL ACTION commenced in the Land Court Department on December 1, 2000.

Following review by this court, 63 Mass. App. Ct. 1105 (2005), the case was heard by *Karyn F. Scheier,* J., on motions for summary judgment.

*Kathleen C. Gallivan,* pro se.

[1] The building inspector and the zoning enforcement officer of Wellesley; and Richard Eyges, Colleen Eyges, Thomas Abate, and Helen Wong, who intervened as defendants.

[2] Justice Cowin participated in the deliberation on this case and authored this opinion prior to his retirement.

*James A. Goodhue* for zoning board of appeals of Wellesley.

*Valerie S. Carter* for Thomas Abate & another.

COWIN, J. The plaintiff, Kathleen C. Gallivan, appeals from a judgment of dismissal by a Land Court judge of her appeal from an adverse decision of one of the defendants, the zoning board of appeals (board) of the town of Wellesley (town), with respect to her request for enforcement of a zoning by-law provision. Following the denial by another defendant, the town building inspector and zoning enforcement officer, of her request for enforcement of a by-law setback requirement against an abutting landowner, see G. L. c. 40A, § 7, the plaintiff appealed unsuccessfully to the board, see G. L. c. 40A, § 8. Then her appeal to the Land Court, see G. L. c. 40A, § 17, was dismissed for lack of jurisdiction by means of a summary judgment rendered in favor of the defendants. Her appeal to this court requires that we examine and distinguish the two avenues of appeal apparently available under G. L. c. 40A, § 8, to a person aggrieved by a municipal official's failure to enforce a zoning by-law provision. We agree with the Land Court judge that an aggrieved person with adequate notice that issuance of a building permit will violate a zoning provision must avail herself of the right to file a timely appeal from the issuance of that permit, and may not lawfully substitute for that remedy a subsequent request for zoning enforcement by the zoning enforcement officer. Accordingly, we affirm the judgment of the Land Court.

1. *Background.* The underlying facts and the prior proceedings are generally undisputed. The property (locus) in question is a corner lot at 89 Manor Avenue, Wellesley, that fronts on both Manor Avenue and Oakdale Avenue. The plaintiff is the owner of abutting property at 85 Manor Avenue. In November and December, 1999, defendants Richard and Colleen Eyges (collectively, Eygeses), then owners of the locus, obtained oral approval from the building inspector of their proposal to place a new modular house, to be constructed largely off-site, on the locus. At the time, the building inspector determined that, because the proposed building would face a different direction than the existing building that it would replace, the land that would abut the plaintiff's property would be defined as a rear, rather than a side, yard. Pursuant to § XIX of the town's zoning by-laws

(by-laws) as then in effect, the minimum rear yard depth was ten feet while the side yard depth was required to be twenty feet.

Relying on the building inspector's informal approval, the Eygeses arranged for construction of the modular house to commence, and made a partial payment to the construction contractor. On January 13 and 20, 2000, notices were published in a local newspaper that a hearing by the town planning board regarding certain proposed amendments to the town by-laws would be conducted on February 1, 2000. Included among the proposals was a clarification of § XIX of the by-laws that "[r]egularly shaped corner lots [such as the locus] shall have two front yards, two side yards and no rear yard." The apparent effect of adoption of such an amendment would be that the locus no longer would be considered as having a rear yard, the area abutting the plaintiff's property would be treated as a side yard, and the setback requirement that otherwise pertained to side yards (twenty feet) would be applicable.

On February 28, 2000, the Eygeses submitted a formal application for a building permit with respect to the locus. The application included a proposed plot plan dated February 4, 2000, which showed that the setback from the easterly boundary of the locus that abuts the plaintiff's property would be 14.6 feet (and thus apparently a zoning violation if the newly advertised zoning amendment were adopted). In accordance with local requirements, specifically, parts B and C of § XXIII of the by-laws, notice of the Eygeses' application was published in a local newspaper and was mailed to abutters, including the plaintiff.

On March 9, 2000, the building inspector issued the permit for which the Eygeses had applied. On March 14, 2000, by means of an "as built certification form" and "plot plan" prepared by a registered land surveyor, the Eygeses confirmed that the location of the building conformed to the building permit. Placement of the preconstructed modular house on the locus began shortly after the building permit issued. The plaintiff did not appeal from the issuance of the building permit.

On March 27, 2000, the Wellesley town meeting voted to amend § XIX of the by-laws. While the language adopted differed somewhat from the amendment advertised earlier, the

effect of the amendment was, consistent with the notice, to re-quire, in 10,000 and 15,000 square foot area regulation districts,[3] that a rear yard abutting the side yard of the next lot have a minimum depth not less than the minimum side yard depth (in this case, twenty feet). In a letter dated July 17, 2000, the plaintiff, pursuant to G. L. c. 40A, § 7, and § XXIII of the by-laws, requested in writing that the building inspector enforce the now-effective, new setback restriction applicable to the Eygeses' now virtually completed modular structure. In a letter dated July 28, 2000, the building inspector declined to enforce the requirement on the ground that he had "verbally authorized" the proposed construction in December, 1999.[4]

On August 21, 2000, the plaintiff appealed to the board from the building inspector's refusal to enforce the new setback re-quirement. See G. L. c. 40A, § 8. After consideration, the board denied the appeal on the ground that construction of the Eygeses' modular dwelling had commenced off-site prior to publication of the proposed by-law amendment, and that the amendment was therefore inapplicable to the Eygeses' project. See G. L. c. 40A, § 6. The plaintiff then proceeded to the Land Court, and her appeal from that unfavorable disposition brings the case here.[5]

2. *Discussion.* The plaintiff's contention before the board was that the zoning amendment that required a twenty-foot setback between the Eygeses' structure and her property line was pub-lished prior to the date on which the Eygeses applied for a building permit, and that consequently the amendment fully ap-plied to the Eygeses' project. The Land Court judge did not reach the merits of the plaintiff's proposition, and neither do we, because we agree with the judge that the board (and there-fore the Land Court) were without jurisdiction to act on the plaintiff's appeal.

The question is whether the plaintiff, if she were to assert

---

[3]The locus is in such a district.

[4]Simultaneously, the building inspector inadvertently sent an enforcement letter to the Eygeses, but rescinded it when the error was brought to his attention. The mistake is not an issue in the present appeal.

[5]While the case was pending in the Land Court, defendants Thomas Abate and Helen Wong acquired the locus at a foreclosure sale.

successfully rights under the amended by-laws, was required to file a timely appeal to the board from the issuance of the building permit, or instead later could request enforcement of the amended by-law and appeal to the board from the denial of that request. Superficially, the applicable sections of the statute appear to accommodate the plaintiff's contention that the choice as to which remedy to seek belongs to her irrespective of the practical consequences of litigating the legality of the structure after it has been erected. See *Elio* v. *Zoning Bd. of Appeals of Barnstable*, 55 Mass. App. Ct. 424, 427-428 (2002) (statute recognizes two possible methods of appeal to permit granting authority). In this regard, G. L. c. 40A, § 8, inserted by St. 1975, c. 808, § 3, provides in relevant part that "[a]n appeal to the permit granting authority [here the board] . . . may be taken by any person aggrieved by reason of his inability to obtain a permit or enforcement action from any administrative officer under the provisions of this chapter [here the building inspector], . . . or by any person . . . aggrieved by an order or decision of the inspector of buildings, or other administrative official, in violation of any provision of this chapter or any ordinance or by-law adopted thereunder."

Thus, if the plaintiff were aggrieved by the placement of the modular structure within twenty feet of her property line, she could have appealed to the board from the decision of the building inspector to issue the permit (as a "person aggrieved . . . by an order or decision . . . in violation of" a zoning provision, *ibid.*). See *Lanner* v. *Board of Appeal of Tewksbury*, 348 Mass. 220, 221-223 (1964) (discussing similar language in statutory predecessor to G. L. c. 40A, § 8). Such an appeal "shall be taken within thirty days from the date of the order or decision which is being appealed." G. L. c. 40A, § 15, as appearing in St. 1987, c. 498, § 3. In the present case, an appeal from issuance of the permit had to be filed not later than April 8, 2000.

The plaintiff did not appeal under this provision but instead, in a letter dated July 17, 2000, sought enforcement of the amended by-law pursuant to G. L. c. 40A, § 7. She did so within six years of the alleged violation of law as permitted by that section. She then filed with the board on August 21, 2000, an appeal

from the building inspector's written refusal (as a "person aggrieved by reason of [her] inability to obtain a permit or enforcement action," G. L. c. 40A, § 8). In accordance with G. L. c. 40A, § 15, she filed her appeal within thirty days of the building inspector's denial of her request. See *Vokes* v. *Avery W. Lovell, Inc.*, 18 Mass. App. Ct. 471, 477-478 (1984). That, however, was significantly later than the thirty days in which to appeal to the board from the issuance of the permit itself, given her by the same statute. We conclude that in the present circumstances, where the plaintiff had a fair opportunity to appeal from the issuance of the permit, she was not entitled to forgo that remedy in favor of a subsequent request for enforcement and appeal therefrom.

While cases that have addressed the two statutory remedies have not directly disposed of the plaintiff's contention that she may choose either remedy at her pleasure, they strongly suggest that the approach adopted by the Land Court judge is the correct one. In *Brady* v. *Board of Appeals of Westport*, 348 Mass. 515, 519 (1965), the court concluded, under an earlier version of the zoning statute, that the Legislature did not "establish a comprehensive statutory scheme for enforcement which restricts to the statutory procedures action by individual citizens seeking to invoke the enforcement process." The court recognized that the statute did not require notice of permit applications to persons who might be affected by them, and that "[d]ecisions granting a permit may not, within the appeal period, come to the attention of persons who will be aggrieved by a violation of the zoning law." *Id.* at 520. Accordingly, the court concluded, "[a]ggrieved persons as to whom applicable provisions in respect of time of appeal are unreasonable may proceed by mandamus for enforcement of the law." *Ibid.*

We believe that there is a clear implication in *Brady* that the use of mandamus to compel enforcement of zoning provisions was available only in circumstances where an aggrieved party was not on notice sufficient to permit a timely appeal from the action that is the cause of her aggrievement. Indeed, the authorization to employ an extraordinary writ such as mandamus strongly suggests that no other remedy is available. "[M]andamus will not lie where there is available another and effective remedy."

*Madden* v. *Secretary of the Commonwealth*, 337 Mass. 758, 761 (1958). Otherwise, the party aggrieved is restricted to the available remedy, including any time limitations applicable to commencing the proceeding.

Following the comprehensive revision of the zoning statutes that took place in 1975, see St. 1975, c. 808, § 3, the right of an aggrieved party to request enforcement of zoning provisions within six years after the commencement of an alleged violation was codified in G. L. c. 40A, § 7, and resort to an extraordinary writ was no longer necessary. See *Vokes*, 18 Mass. App. Ct. at 482-483. The *Vokes* decision recognized the right of an aggrieved party to seek enforcement and to appeal from a denial, and cites the reasons set forth in *Brady* why such a remedy must be made available. *Id.* at 481-482. In *Vokes*, where the original building permit was apparently properly issued, the plaintiff did not become an aggrieved person until the owner violated the zoning by-laws by exceeding the permit's scope, at which time the aggrieved party's sole available remedy was to seek an enforcement action. *Id.* at 483.

The case of *Fitch* v. *Board of Appeals of Concord*, 55 Mass. App. Ct. 748, 750-753 (2002), is consistent. There, we stated "that the request for enforcement procedure was independent of the right to take an appeal under G. L. c. 40A, § 15, within thirty days of the issuance of a permit." *Id.* at 751. However, the next two sentences in the opinion clarify that the "independen[ce]" of this right derives from the fact that "there is no public notice of the issuance of a building permit. If a § 15 appeal were the sole remedy for a party aggrieved, the recipient of a permit could keep the permit under wraps for thirty days and then would have succeeded in foreclosing any challenge." *Ibid.* See *Vokes*, 18 Mass. App. Ct. at 482 n.17 (lack of notice of building permit or alleged violation of by-law warrants alternative remedy of seeking enforcement from building inspector).

The plaintiff relies on language in *Elio* v. *Zoning Bd. of Appeals of Barnstable*, 55 Mass. App. Ct. at 427, that "irrespective of the existence of any such permit or order, a person may make a written request to the officer to enforce the zoning ordinance and then, if that request is denied in writing, may appeal the denial to the board within the time prescribed by § 15."

She argues essentially that this means that the opportunity to appeal from issuance of a permit is irrelevant to the right of an aggrieved person to forgo such an appeal and still seek enforcement later of the zoning by-laws allegedly violated. We do not share the plaintiff's interpretation of the language in *Elio*. The reference to the "existence," *ibid.*, of a permit or order recognizes that a violation may take place notwithstanding the issuance of a permit (where, for example, the owner exceeds the scope of the permit), and the fact that a permit may have been issued does not preclude a request for enforcement. The reference was not intended to indicate that an aggrieved party could bypass the process of appealing from the issuance of a permit even when that party is on notice that an allegedly unlawful permit has been issued.

We are persuaded, and so hold, that a party with adequate notice of an order or decision that violates a zoning provision must appeal that order or decision to the appropriate permit granting authority within the thirty-day period allotted for such an appeal. See G. L. c. 40A, §§ 8, 15. Where adequate notice of such order or decision exists, such a person may not lawfully bypass that remedy and subsequently litigate the question by means of a request for enforcement under G. L. c. 40A, § 7. The contrary position pressed by the plaintiff permits an aggrieved person, armed with knowledge of a zoning violation, to sit on her rights while the recipient of the permit incurs substantial expense by undertaking authorized construction, only to have the aggrieved person spring into action sometime in the next six years and demand enforcement of a zoning restriction. That the permit holder may be in a position to assert a laches defense seems a faint and uncertain remedy given the circumstances.

Permitting the aggrieved party this choice would make little sense. The availability of a request for enforcement answers the potential unfairness of holding an aggrieved party to a thirty-day appeal period where the permit recipient can foreclose review by simply taking no action under the permit for thirty days. See *Fitch* v. *Board of Appeals of Concord*, 55 Mass. App. Ct. at 751. The plaintiff's approach substitutes one unfairness for another by allowing an aggrieved party to take no action for as long as six years, and then undertake proceedings that threaten

to undo long-settled expectations and their consequences. This cannot have been the legislative purpose. See the 1972 Report on Zoning in Massachusetts: Proposed Changes and Additions to Zoning Enabling Act Chapter 40A, prepared by the Department of Community Affairs, which served in part as a basis for the 1975 statutory revisions, and which noted that enforcement of zoning requirements "after construction has begun or in some cases, proceeded to completion, is uneconomical for both the developer and the community." 1972 House Doc. No. 5009 at 56. "Courts must ascertain the intent of a statute from all its parts and from the subject matter to which it relates, and courts must interpret the statute so as to render the legislation effective, consonant with reason and common sense." *Cote-Whitacre* v. *Department of Pub. Health*, 446 Mass. 350, 358 (2006) (Spina, J., concurring).

We recognize that, in the absence of a requirement in the Zoning Act (G. L. c. 40A) that there be notice of the issuance of a building permit, there may well be disputes that center on whether an aggrieved person actually has sufficient notice of a permit to require that she appeal at that time. For the reasons set forth below, we conclude that the sufficiency of notice in this case has been established. In other instances, disputes will have to be resolved by findings of relevant facts and appropriate rulings of law. We do not purport to suggest today what does or does not constitute adequate notice for this purpose. We observe, however, that municipalities are free, if they wish, to create by means of by-law provisions notice requirements that would eliminate many disagreements over whether adequate notice has been received.

Applying our interpretation of the statutory scheme to the present case, the only remaining question to be resolved arises from the plaintiff's assertion that she did not have adequate notice regarding issuance of the permit to the Eygeses, and consequently was entitled to pursue a subsequent enforcement action notwithstanding the absence of an appeal from the permit issuance. She argues in this regard that whether she had adequate notice is a disputed question of material fact, and that accordingly summary judgment on the issue could not be entered. We agree that granting summary judgment is appropriate only when there are no material facts in dispute and a party is entitled to judgment as a

matter of law. See *Commonwealth* v. *One 1987 Mercury Cougar Auto.*, 413 Mass. 534, 536 (1992), citing *Community Natl. Bank* v. *Dawes*, 369 Mass. 550, 556 (1976). Any doubts regarding the facts must be resolved against the party who seeks summary judgment. See *Attorney Gen.* v. *Bailey*, 386 Mass. 367, 371 (1982).

Viewing the evidence in a light most favorable to the plaintiff, it cannot reasonably be disputed that the plaintiff became at least constructively aware of a potential zoning violation when she received notice of the Eygeses' application on February 28, 2000, for a building permit. The plaintiff challenges as erroneous the judge's statement that "[the p]laintiff does not dispute that she received notice of the Application clearly depicting the zoning violation at the time of its filing with the Building Inspector." We acknowledge in this regard that the by-law provisions (§ XXIII, parts B and C) do not specify precisely what such notice must consist of,[6] and the record before us does not appear to indicate what in fact was sent. Thus, we are unable to say whether the alleged zoning violation (a setback of 14.6 feet rather than twenty feet) actually was disclosed in either the newspaper advertisement or the mailing forwarded to the abutters.[7]

Be that as it may, we are satisfied that a notice that disclosed that an application for a building permit had been filed with respect to adjacent property, even if it did not contain specific measurements demonstrating a zoning violation, was sufficient to place on the plaintiff a duty of inquiry. That duty was not onerous; a visit to the building department would have disclosed (or, given the fastidiousness demonstrated by the plaintiff with respect to other aspects of the process, did disclose) that the application envisioned a setback from the plaintiff's property line of only 14.6 feet. The notice, whether actual or constructive, gave the plaintiff a reasonable opportunity to appeal to the

[6]Section XXIII, part B, requires publication of "the name of the applicant, the name of the street on which the property to which the permit relates is located or by which it is approached, the street number . . . and the nature of the work to be done." Section XXIII, part C, requires only that "notice" shall be sent by mail, without further elaboration.

[7]We note that none of the parties reproduced the notice in the record appendix, a contribution that presumably would have been meaningful on the issue.

Gallivan v. Zoning Board of Appeals of Wellesley.

board within thirty days, and her failure to do so precluded a subsequent attack on the permit by means of an enforcement request.

3. *Attorney's fees.* Abate and Wong seek an award of attorney's fees and expenses on the ground that the plaintiff's appeal is frivolous. See Mass.R.A.P. 25, as appearing in 376 Mass. 949 (1979). As should be obvious from the preceding discussion, the plaintiff's appeal, while not successful, was far from frivolous, and she argued her various propositions efficiently and effectively. Accordingly, we decline to award attorney's fees.

*Judgment affirmed.*