FISHER vs. PRESTI FAMILY LIMITED PARTNERSHIP, 100 Mass. App. Ct. 234

 
 KATHLEEN A. FISHER vs. PRESTI FAMILY LIMITED PARTNERSHIP & another [Note 1] (and a consolidated case [Note 2]).

100 Mass. App. Ct. 234
 March 11, 2021 - September 16, 2021

Court Below: Land Court
Present: Wolohojian, Englander, & Hand, JJ.

 

Practice, Civil, Zoning appeal. Zoning, Appeal, Appeal to board of appeals, Board of appeals: decision, Board of appeals: jurisdiction, Timeliness of appeal, Enforcement.

In consolidated civil actions brought in the Land Court and Superior Court, arising from a landowner's appeals to the zoning board of appeals from a zoning enforcement officer's (officer's) denial of her enforcement requests, a Land Court judge erred in allowing summary judgment in favor of the abutting landowners, where, although the landowner did not timely appeal the officer's earliest letter denying her requests for zoning enforcement against certain uses of the abutting landowners' property, her failure did not foreclose her from pursuing the same relief through her timely appeals from the officer's subsequent letters denying her requests, in that nothing prevented the landowner from renewing her requests as to ongoing uses of the abutting landowners' property. [239-244]

CIVIL ACTION commenced in the Land Court Department on January 9, 2018. 

 CIVIL ACTION commenced in the Superior Court Department on January 3, 2018.

 After consolidation, the cases were heard by Howard P. Speicher, J., on a motion for summary judgment. 

 Mark Bobrowski for Kathleen A. Fisher.

 Robert E. McLaughlin, Sr. (John G. Hofmann also present) for Presti Family Limited Partnership & another.

 WOLOHOJIAN, J. These two cases are before us on appeal from judgments entered following the decision of a Land Court judge allowing Presti Management Corporation's (Presti) motion to 

 Page 235 

dismiss or, in the alternative, for summary judgment. [Note 3], [Note 4] In essence, the question presented is whether the Land Court judge erred in concluding that, as a matter of law, Kathleen A. Fisher's appeals to the zoning board of appeals (board) of Stow (town) from the zoning enforcement officer's denial of her requests for zoning enforcement were untimely, thus depriving the board of jurisdiction. We conclude that although the zoning enforcement officer's letter of May 26, 2017, denying Fisher's requests for zoning bylaw enforcement against certain uses of property owned by Presti was an appealable decision from which Fisher did not timely appeal, her failure to appeal that decision did not foreclose her from pursuing the same or related relief through her timely appeals from the zoning enforcement officer's letters of June 30, 2017, and August 7, 2017, denying Fisher's subsequent requests for zoning enforcement against ongoing uses of Presti's property. We accordingly vacate the judgments.

 Background. We review a summary judgment motion de novo, looking at the summary judgment record in the light most favorable to the nonmoving party. See 81 Spooner Rd., LLC v. Zoning Bd. of Appeals of Brookline, 461 Mass. 692, 699 (2012); Central St., LLC v. Zoning Bd. of Appeals of Hudson, 69 Mass. App. Ct. 487, 491 (2007).

 On April 7, 2017, Fisher sent a letter (April 7 letter) requesting zoning bylaw enforcement to Craig Martin, the town building commissioner and zoning enforcement officer. She asked that Martin issue a "cease and desist order for the commercial traffic being generated [by Presti and his commercial tenants] along [her abutting] property." Fisher then pointed to certain provisions of the zoning bylaw, and asserted that Presti's use of its property had changed over time without Presti obtaining any special permits. Fisher also noted that vehicles using the Presti property had 

 Page 236 

damaged three fences on her property. [Note 5]

 Without having yet received a response to her April 7 letter, Fisher again wrote to Martin on May 22, 2017 (May 22 letter) "to ask that [he] stop the commercial traffic that is growing and increasingly dangerous and is in violation of the zoning regulations in [t]he [t]own." Fisher noted that Presti's property was "business zoned only and not commercial business or construction zoned," and identified several additional specific concerns about Presti's property and the activities being conducted there: (1) damage to the three fences on her property, some of which was caused by a Presti tenant that operated an automobile dealership; (2) the clearing of land and leaving of construction debris by another commercial tenant; (3) the removal of soil and trees from Presti's property, resulting in a loss of buffer between the business properties and Fisher's residential one; (4) removal of soil near the conservation land at the rear of Presti's property, and operation there of a commercial trucking and trash operation; (5) the parking by Presti's employees and tenants along Fisher's fence, an area that was a required buffer; (6) the increased noise, vibration, and shaking of Fisher's home due to the commercial uses of Presti's property; (7) the increased dust and dirt; and (8) the noise and traffic beginning as early as 5:30 a.m. seven days per week. Fisher closed the May 22 letter with the following:

"Please respond as to the status of the cease and desist order or please give me the proper documentation showing why you and the town believe [Presti] has the right to start up a commercial operation abutting residential properties without notice from [t]he [t]own . . . .

"I have owned my property longer than [Presti] and none of this is a grandfathered use."

 On May 26, 2017, Martin responded in writing (May 26 letter) to both of Fisher's letters, which he identified as "requesting cease [and] desist action to stop commercial traffic on the [Presti] property" -- a characterization with which Fisher does not disagree. Martin noted that he had met with Richard Presti and had inspected the property. He stated that Presti's tenants were using the property to store "trucks, cars, snowplowing equipment, trailers,

 Page 237 

 building [and] construction materials, piles of cord wood, wood chippers, clean dumpsters and school buses." But Martin concluded that these "types of uses" were "grandfathered," [Note 6] as he had concluded several years earlier, in 2010. [Note 7] Martin also stated that he expected that traffic on and off Presti's property would be variable but that, in any event, he had no jurisdiction or control over traffic. Finally, Martin stated that he had met with Richard Presti to evaluate the excavation activity near the conservation land and that he (Martin) had provided direction on protecting the adjacent land and providing stabilization and erosion control. Martin's May 26 letter concluded with an invitation to Fisher to contact the building department should she need any further information. The May 26 letter did not inform Fisher that it was an appealable decision or what the process was for appeal. Nonetheless, Fisher acknowledged in her deposition that she "understood [Martin] was not going to give [her] the relief [she was] seeking." Fisher did not file an appeal to the board within thirty days of the May 26 letter.

 Fisher next wrote to Martin on June 8, 2017 (June 8 letter). Fisher repeated her various complaints about the uses of Presti's property, and tied them to specific provisions of the town's zoning bylaw. She wrote that she did not believe the uses were "grandfathered" and that she had been unaware of Martin's 2010 letter previously concluding they were protected. She also identified several new issues: installation of a new garage door and renovation of the inside of the building on Presti's property (for which she requested copies of all permits issued), excessive lighting on the property, an old engine stored in the open, and a conflict that had arisen when she tried to make a video recording of activity on Presti's property.

 Page 238 

 Martin responded in writing on June 30, 2017 (June 30 letter). Martin stated he had been unable to find any building permits for the building's interior wall construction and garage door. He provided further information about the soil removal and also stated that the volume of soil removed was below that requiring a permit, and that he had scheduled a meeting with Presti to discuss the remaining items in Fisher's June 8 letter. Martin further stated, "[i]f in the end you do not accept my conclusions you may file an appeal with the [z]oning [b]oard of [a]ppeals."

 Almost one month later, on July 24, 2017, counsel for Fisher wrote to Martin, asking that Martin provide his "opinion concerning all the items specified in Ms. Fisher's correspondence. Specifically, Ms. Fisher's correspondence requests zoning enforcement for all the current uses by all the tenants at the [Presti] [p]roperty."

 On July 31, 2017, Fisher appealed Martin's June 30 denial of zoning relief to the board.

 On August 7, 2017, Martin responded to the letter from Fisher's counsel (August 7 letter), and provided specific reasons for his decision not to issue a cease and desist order for the five activities identified in Fisher's June 8 letter: (1) based on his own knowledge and observations of the Presti property since 1946, Martin concluded that "automotive display, sales, service, tire repair, body shop, landscape equipment storage, and school bus parking" were longstanding uses; (2) a named construction company was not a tenant at Presti's property; (3) lighting was used for security and was "Full Cut Off, LED"; (4) Martin found no violations regarding "vehicle parking, landscaped buffer [and] traffic on and off the site"; and (5) "environmental concerns, odor, gas or oil storage should be" addressed to other town departments. Martin also concluded that personal disputes between Fisher and Richard Presti were outside Martin's jurisdiction. On August 30, 2017, Fisher filed with the board an appeal from Martin's August 7 letter.

 Fisher's appeals from Martin's June 30 and August 7 letters were consolidated by the board. After a hearing on both appeals, the board issued a detailed decision in which it affirmed in part and reversed in part Martin's denials of Fisher's requests for zoning enforcement. As set forth in more detail in the margin, [Note 8] the board determined that certain uses of Presti's property were

 Page 239 

 neither permitted nor "grandfathered"; in those instances, the board reversed Martin's decisions and determined that Presti needed to apply for special permits or, failing such application, to cease and desist the activity. The board concluded that the remaining uses were lawfully nonconforming or else did not constitute a change or expansion of a preexisting nonconforming use.

 Fisher appealed the board's decision to the Land Court, while Presti appealed to the Superior Court. See G. L. c. 40A, § 17. As we noted above, those actions were consolidated and assigned to a judge of the Land Court, where Presti moved to dismiss, or in the alternative, for summary judgment, on the ground that Fisher's appeals to the board were untimely. [Note 9] Fisher opposed the motion, as did the town defendants. Ultimately the judge concluded that Fisher's April 7 and May 22 letters were zoning enforcement requests and that Martin's May 26 letter in response was an appealable decision as to those requests. It was undisputed that Fisher did not timely appeal Martin's May 26 letter. The judge ruled that Fisher's subsequent letters to Martin could not, in essence, revive or extend the appeals period and, accordingly, the judge concluded that the appeals were untimely and the board's decision was a nullity.

 Before us now are Fisher's appeals, in which the town has not joined.

 Discussion. 1. Timeliness of appeal. There is no dispute that Fisher failed to appeal to the board within thirty days of Martin's May 26 letter; there is equally no dispute that she did appeal within thirty days of Martin's June 30 and August 7 letters. The question is whether Martin's May 26 letter was an appealable decision for purposes of G. L. c. 40A, § 8, such that the consequences of Fisher's failure to appeal from it could not be bypassed by her subsequent letters seeking similar zoning enforcement. See Gallivan v. Zoning Bd. of Appeals of Wellesley, 71 Mass. App. Ct. 850, 857 (2008).

 Page 240 

 Fisher argues that Martin's May 26 letter was not an appealable decision for two reasons. First, she contends that her April 7 and May 22 letters (to which the May 26 letter responded) were limited to requesting zoning enforcement regarding "commercial traffic" on Presti's property. Second, she contends that the May 26 letter was not sufficiently definitive to constitute an appealable decision. In the alternative, Fisher argues that her subsequent zoning enforcement requests were not foreclosed to the extent they raised new issues not encompassed in her April 7 and May 22 letters. We address each of these contentions in turn.

 2. Nature and scope of Fisher's April 7 and May 22 letters. Under G. L. c. 40A, § 7, any person may make a request in writing to the building inspector (or other officer charged with zoning enforcement) to enforce zoning ordinance or bylaw "against any person allegedly in violation of the same." We agree with the Land Court judge that Fisher's April 7 and May 22 letters were written requests for zoning relief. Fisher does not now contend otherwise. However, she argues that she was only seeking zoning enforcement with respect to "commercial traffic" on Presti's property. [Note 10] We disagree.

 In her April 7 letter, Fisher stated that she was "asking the [t]own . . . to enforce the zoning bylaws on [Presti's] properties" and to "issue a cease and desist order for the commercial traffic being generated along [her] property." Fisher did not define what she meant by "commercial traffic," but she also referred to it as "commercial use" of the property. Fisher's specific concerns about the "commercial use" were contained in a letter she sent to Richard Presti and that she attached to her April 7 letter. Fisher, though, has not included the attachment in the appellate record; nor does it appear that she included it in the summary judgment record below. Thus, although Fisher uses the terms "commercial use" and "commercial traffic" interchangeably in her April 7 letter, it is not altogether apparent what she intended the scope of either term to be.

 Regardless, in her May 22 letter, Fisher characterized her April 7 letter as seeking a "cease and desist order on commercial

 Page 241 

 activity on [Presti's] properties." (emphasis added). "Commercial activity" is synonymous with "commercial use" and certainly broader than "commercial traffic." Moreover, Fisher clarified the scope of her request by enumerating a series of specific concerns going beyond commercial "traffic," including damage to fences on her property, removal of soil and trees, removal of a buffer, operation of a commercial trucking and trash operation, "and who knows what else." As before, Fisher also requested that a cease and desist order be issued because "commercial use does not belong in the business zoned area" (emphasis added). And she closed her May 22 letter by noting that Presti did not have "the right to start up a commercial operation abutting residential properties" (emphasis added). Thus, although it is true that Fisher requested zoning enforcement with respect to commercial traffic on Presti's property, her request was not confined to traffic alone. Fisher repeatedly made reference to commercial "use," "activity," and "operation" -- all terms extending beyond traffic. Moreover, she identified specific uses of the Presti property, most of which were not traffic-related.

 3. Nature and scope of Martin's May 26 letter. Similarly, although it is true that Martin referred to Fisher's letters as requesting a cease and desist order to stop "commercial traffic," the remainder of his May 26 letter makes clear that he understood Fisher was more broadly challenging the commercial uses of Presti's property. Among other things, Martin stated that he inspected the property "regarding current uses and traffic" (emphasis added). He identified several nontraffic uses of the property, including "storing materials which consist of trucks, cars, snowplowing equipment, trailers, building [and] construction materials, piles of cord wood, wood chippers, clean dumpsters and school buses." Martin also stated that he had evaluated the excavated area of the Presti property. Furthermore, Martin enclosed and referenced his earlier letter of July 13, 2010, to Presti in which Martin had concluded that storage of various materials [Note 11] was "grandfathered." In short, Martin's May 26 letter indicated that he understood Fisher to have challenged various commercial uses of Presti's property, and not simply traffic, and the scope of his response was consistent with the scope of her zoning enforcement requests.

 Page 242 

 What remains is whether Martin's May 26 letter constituted an appealable decision under G. L. c. 40A, § 8, [Note 12] so as to trigger the thirty-day appeal period applicable under G. L. c. 40A, § 15. [Note 13] Relying on Pepin v. Belrose, 15 LCR 284, 286 (2007), the Land Court judge understood this question to turn on whether Martin's May 26 letter was "sufficiently definitive to constitute an 'order or decision,' tantamount to a refusal to enforce the [b]ylaw." Neither the Supreme Judicial Court nor the Appeals Court has used this precise formulation. Instead, our appellate cases have spoken in terms of whether the aggrieved party has received "adequate notice" of the adverse decision and therefore has the ability to comply with the thirty-day appeal period. See Connors v. Annino, 460 Mass. 790, 796 (2011) ("Where the 'decision' of the building commissioner is the issuance of a building permit, it is reasonable and consistent with the statutory scheme to require the aggrieved party to comply with the route prescribed in §§ 8 and 15 if the party has adequate notice of the permit's issuance and therefore an ability to meet the thirty-day limitation period imposed by those two sections"); Gallivan, 71 Mass. App. Ct. at 859-860. Although differently phrased, the inquiry under either formulation is in substance essentially the same: that is, did a zoning enforcement officer's written communication adequately notify the recipient of the officer's adverse decision. If it did, then that is the date from which the thirty-day appeals period runs. [Note 14] See Vokes v. Avery W. Lovell, Inc., 18 Mass. App. Ct. 471, 479 (1984) (concluding that "the date on which a zoning enforcement officer responds in writing to a § 7 request for enforcement creates the appealable decision contemplated by § 8 and becomes the date for measuring the thirty-day appeal period set forth in § 15").

 By this measure, Martin's May 26 letter was an appealable decision for purposes of G. L. c. 40A, § 8. The May 26 letter informed Fisher that Martin had looked into her complaints and that the commercial uses of Presti's property were preexisting 

 Page 243 

nonconforming uses. See G. L. c. 40A, § 7 (zoning enforcement officer "shall notify, in writing, the party requesting such enforcement of any action or refusal to act"). This was sufficient to put her on notice that she had not obtained enforcement action with respect to the commercial uses and activities identified in her April 7 and May 22 letters. See G. L. c. 40A, § 8. Fisher does not contend, nor does the summary judgment record contain any information to suggest, that the May 26 letter was inadequately worded to inform her that Martin refused her requested zoning enforcement. To the contrary, her position at summary judgment was that the letter "speaks for itself," and she acknowledged that she "understood [Martin] was not going to give [her] the relief [she was] seeking." Although it is true that Martin invited Fisher to contact the building department if she needed further information, and it is also true that he did not explicitly inform her that she had a right to appeal, the relevant inquiry is whether Fisher received adequate notice that Martin was refusing the enforcement relief Fisher had requested in her April 7 and May 22 letters. See Connors, 460 Mass. at 797; Miles-Matthias v. Zoning Bd. of Appeals of Seekonk, 84 Mass. App. Ct. 778, 782-783 (2014).

 4. Effect of failure to appeal within thirty days of Martin's May 26 letter. Where an aggrieved party has adequate notice of the issuance of a building permit, "the party 'may not lawfully bypass [a timely appeal to the zoning board of appeals] and subsequently litigate the question by means of a request for enforcement under G. L. c. 40A, § 7'" (emphasis added). Connors, 460 Mass. at 796, quoting Gallivan, 71 Mass. App. Ct. at 857. The question presented here is whether a similar rule should apply to successive requests for zoning bylaw enforcement challenging ongoing uses of property. We think it should not. Except for the "indirect effects of the statute of repose provisions set forth in G. L. c. 40A, § 7," [Note 15] the Legislature has placed "no express statutory limitation on when

 Page 244 

 [an] enforcement request need be filed." Barkan v. Zoning Bd. of Appeals of Truro, 95 Mass. App. Ct. 378, 385 (2019). This makes sense because uses of real property may evolve or change over time, an aggrieved person may not know of the precise contours, extent, or even existence of all uses of property at the same point in time, and because towns have an ongoing interest in the use of property within their boundaries. See Connors, supra at 798 & n.9. In addition, we have found nothing either in our case law or in c. 40A that forecloses multiple or successive requests for zoning bylaw enforcement by different aggrieved persons (such as other abutters). [Note 16] Moreover, a property owner should not acquire a permanent right to engage in ongoing uses that violate zoning bylaws simply because one aggrieved person failed to timely appeal the zoning enforcement officer's denial of zoning enforcement. Accordingly, apart from the statute of repose contained in G. L. c. 40A, § 7, and the preclusive effect of a decision by a zoning board or of a court (none of which are at issue here), nothing prevented Fisher from renewing her requests for zoning enforcement as to ongoing use of Presti's property, and she was entitled to appeal within thirty days from Martin's denials of those subsequent enforcement requests. [Note 17]

 Page 245 

 Conclusion. Accordingly, we vacate the judgments and remand the matters for further proceedings consistent with this opinion.

So ordered.

FOOTNOTES
[Note 1] Zoning Board of Appeals of Stow. 

[Note 2] Presti Management Corporation vs. Zoning Board of Appeals of Stow & another. 

[Note 3] We note that the motion was filed by Presti Family Limited Partnership, but that the judge's decision refers to the motion as that of Presti Management Corporation. Our use of "Presti" throughout this decision encompasses both Presti Family Limited Partnership and Presti Management Corporation, general partner of Presti Family Limited Partnership. 

[Note 4] The action underlying appeal no. 20-P-611 was brought in the Land Court, and the action underlying appeal no. 20-P-696 was brought in the Superior Court. At the request of the parties, the cases were consolidated, and a judge of the Land Court was designated pursuant to G. L. c. 211B, § 9, to hear the Superior Court case along with the Land Court case. Judgment entered in the Superior Court and in the Land Court. The two cases have been joined for appeal. 

[Note 5] Fisher enclosed correspondence between her and Presti in which she had asked that commercial use of Presti's property stop. This correspondence is not in the appellate record. 

[Note 6] Given its origins, we use the term "grandfather" only where necessary to reflect what is in the record. See Comstock v. Zoning Bd. of Appeals of Gloucester, 98 Mass. App. Ct. 168, 172 n.11 (2020). 

[Note 7] Martin had reached his 2010 conclusion in response to an inquiry from Presti. Specifically, Martin had stated, in a letter to Presti dated July 13, 2010: 

"After researching the building department files, the January 19, 2001 [z]oning [b]oard of [a]ppeals decision relative to the property and conducting a site visit on July 8, 2010 to view the stored materials which consisted of pickup trucks, cars, snowplowing equipment, trailers, building materials, piles of cord wood, wood chipper and school buses, it is my determination that these types of uses are the same or consistent with the past uses of the site recognized as grandfathered uses by the [z]oning [b]oard of [a]ppeals and that no [s]pecial [p]ermits are required."

[Note 8] Specifically, the board determined that the following were not permitted or "grandfathered": (a) the outside display or storage of vehicles other than automobiles, (b) the contractor, landscaper and tree business, with associated storage of equipment, including containers, and (c) lighting fixtures that did not comply with the zoning bylaw. 

[Note 9] Presti did not challenge the timeliness of Fisher's appeals before the board, but instead raised the issue for the first time before the Land Court judge. Neither party has argued or briefed the question whether Presti's failure to challenge the timeliness of the appeals before the board resulted in waiver. Accordingly, we do not consider this interesting question, the answer to which may turn on whether the deadline imposed by G. L. c. 40A, § 15, is a requisite for a board of appeals to have subject matter jurisdiction. 

[Note 10] Fisher appears to have taken a more aggressive position before the Land Court judge, arguing that the April 7 and May 22 letters were not zoning enforcement requests at all. On appeal to this court, her position is more limited in the sense that she acknowledges that the letters were zoning enforcement requests, but argues that the scope of the requests was limited to seeking to stop commercial "traffic" on the property. 

[Note 11] The "stored materials" listed in the 2010 letter consisted of "pickup trucks, cars, snowplowing equipment, trailers, building materials, piles of cord wood, wood chipper, and school buses." 

[Note 12] General Laws c. 40A, § 8, provides that an appeal may be taken by any person aggrieved "by reason of his inability to obtain a permit or enforcement action." 

[Note 13] General Laws c. 40A, § 15, provides that any appeal under § 8 "shall be taken within thirty days from the date of the order or decision which is being appealed." 

[Note 14] There is no claim in this case that Fisher did not receive Martin's May 26 letter. 

[Note 15] General Laws c. 40A, § 7, provides in relevant part: 

"If real property has been improved by the erection or alteration of [one] or more structures and the structures or alterations have been in existence for a period of at least [ten] years and no notice of an action, suit or proceeding as to an alleged violation of this chapter or of an ordinance or by-law adopted under this chapter has been recorded in the registry of deeds for the county or district in which the real estate is located or, in the case of registered land, has been filed in the registry district in which the land is located within a period of [ten] years from the date the structures were erected, then the structures shall be deemed, for zoning purposes, to be legally non-conforming structures subject to section 6 and any local ordinance or by-law relating to non-conforming structures."

[Note 16] Indeed, G. L. c. 40A, § 8, appears to provide a right to appeal a zoning officer's enforcement denial only to persons who initially sought such relief from the officer: "any person aggrieved by reason of his inability to obtain a permit or enforcement action from any administrative officer" may appeal (emphasis added). Other equally aggrieved persons (such as other abutters) do not appear to have a right to appeal an enforcement officer's decision denying zoning enforcement if they did not join in the original enforcement request. The statutory language appears to contemplate, therefore, that each abutter must make his or her own enforcement request in order to seek zoning board review. The language of § 8 stands in contrast to that contained in §§ 13 and 17, neither of which contains the limiting pronoun "his," but instead speak only of "any aggrieved person." We merely here note the difference in language between § 8 and §§ 13 and 17, without intending to offer any view on the question left open in Green v. Zoning Bd. of Appeals of Southborough, 96 Mass. App. Ct. 126, 129 (2019) (open question whether aggrieved person who did not join in another's appeal to zoning board could nonetheless appeal board's decision under § 17). 

[Note 17] There is no suggestion in this case that Fisher's multiple letters to Martin, or her failure to timely appeal Martin's initial response, were anything other than the imperfect actions of an unrepresented person attempting to navigate the system to obtain review of her concerns. This is not a case of an abutter making successive filings with an improper motivation or purpose. Nor should our opinion be read to sanction such situations. 

 
 Home/Search 
 Table of Cases by Citation
 Table of Cases by Name 
 

 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.