Rufo, Robert C., J.
INTRODUCTION
The Town of Falmouth constructed a wind turbine, known as Wind I, at the waste water treatment faciliiy which it owns and operates. The building permit for Wind I was issued by the town’s building commissioner on June 30, 2009 after he determined that a special permit was unnecessary. Wind I became operational in March of 2010. Thereafter, on October 4, 2010, the plaintiffs appealed to the Falmouth Zoning Board of Appeals which, on March 3, 2011, affirmed the issuance of a building permit for Wind I without a special permit.
A jury-waived trial on these consolidated actions was conducted on January 28, 2013 and February 4, 2013, at which a total of eleven witnesses testified and twenty-two exhibits were admitted into evidence. Based on all the credible evidence, drawing such fair inferences as this Court finds to be reasonable, and resolving questions of credibility where they occur, this Court finds the following material facts.
FINDINGS OF FACT
Pursuant to a building permit issued by its Building Commissioner on June 30, 2009, the Town of Falmouth (“Town”) constructed a wind turbine at the Town’s Waste Water Treatment Faciliiy (“WWTF”), which had been in operation for many years utilizing electricity purchased from the grid. The installed wind turbine (“Wind I”), is a Vestas V-82, signifying that the diameter of the circle made by the turning blades measures 82 meters (269 feet) across. Wind I has an electrical output rating of 1.65 megawatts (“MWj. The structure has a hub height of 262 feet above grade, and a total height to the tip of the blades in the uppermost portion of 397 feet. In normal operating conditions, Wind I is capable of generating approximately 3,500 megawatt hours of electricity per year. The WWTF uses a portion of the electricity generated by Wind I, and the excess electricity is sold to the NStar grid and generates revenue for the Town in dollars or energy credits.
The Falmouth Zoning Bylaw is set forth at Chapter 240 of the Code of the Town of Falmouth (“the Bylaw”). (Ex. 1.) The site ofWind I is a 314.6-acre parcel owned by the Town and located in a Public Use District under the Bylaw. The WWTF consists of multiple buildings and structures performing different functions in the treatment process. There is an administration and operation control building, a sequencing batch processor building, an odor control building, and six infiltration basins. Each of these buildings and structures is an integrated component of the treatment facility. The WWTF has existed for many years without a wind turbine, and has undergone numerous expansions and improvements. Wind I is the first installation of a renewable energy faciliiy at the WWTF. The Bylaw does not treat or define the term “wind turbine,” but does, in Section 240-13, define the term “Windmill.” All parties agree that Wind I is a “windmill” as that term is defined by the Bylaw.[5]
The process to permit and build Wind I began in 2002. Between 2005 and 2009, there were seven articles acted upon at town meetings to authorize and advance the installation, financing, and operation of Wind I. All sessions of town meetings are televised live on the local public access channel, FCTV 13, and extensively reported in local newspapers such as the Falmouth Enterprise and the Cape Cod Times. At the annual town meeting on April 4, 2006, the Town voted *252 to approve article 15 and authorized the Board of Selectmen to petition the General Court for special legislation entitled, “An Act Authorizing the Town of Falmouth to Install, Finance And Operate Wind Energy Facilities.” At the annual town meeting on April 5, 2007, the Town voted to approve article 12 and to authorize the Board of Selectmen to petition the General Court for special legislation entitled, “An Act Authorizing the Town of Falmouth to Install, Finance and Operate Wind Energy Facilities.” At the annual town meeting on November 13, 2007, the Town voted to appropriate $4,000,000 to install a wind energy facility at the WWTF and to authorize the Town Treasurer, with the approval of the Board of Selectmen, to borrow said sum and to issue bonds and notes of the town therefore. At the annual town meeting on November 12, 2008, the Town voted to appropriate an additional $992,000 to install a -wind energy facility at the WWTF and authorize the Town Treasurer, with the approval of the Board of Selectmen, to borrow said sum and to issue bonds and notes of the Town therefore.
The Falmouth Board of Selectmen discussed the wind turbine project and received update reports on Wind I at its meetings on twenty-one occasions during the years 2008 and 2009. (Ex. 20.) The Falmouth Energy Committee, which usually meets twice a month, was involved with the project to install, finance, and operate wind energy facilities at the WWTF from its beginning. The Energy Committee helped identify the site and arranged for meteorological and feasibility studies, then reported to the Town on the benefits of wind turbine energy facilities. The Energy Committee discussed the wind turbine project at its meetings on eleven occasions during the years 2008 and 2009. During the planning process for Wind I, the Energy Committee sent periodic notices to neighbors and abutters of the WWTF within 900 feet of the property line. In sending these notices, the Energy Committee relied upon a list of neighbors and abutters provided to it by the Board of Assessors. A member of the Energy Committee testified that she thought plaintiff Elizabeth Anderson’s name was on this list, but the Town did not retain the actual list and could not produce it at trial.
The Town’s Building Commissioner is Eladio Gore (“Gore”). He has served in his appointed position since 1990. The Building Commissioner is responsible for issuing building permits in the Town and is responsible for enforcement of the Bylaw. The Bylaw does not expressly exempt the Town from any of its provisions. As noted above, the WWTF is located in a “Public Use District,” which is regulated by Article VII (§§240-29 through 240-33) of the Bylaw. Section 240-30 of the Bylaw provides that uses as of right in a Public Use District include “Permitted community service uses,” which is defined to include: “All municipal purposes, including the administration of government, parks, playgrounds, recreation buildings, Town forests, watershed, water towers and reservoirs, beaches, fire and police stations and armories.” (Ex. 1.)
The Falmouth Zoning Board of Appeals (“ZBA”) is the special permit granting authority under the Bylaw. Section 240-33G(5) of the Bylaw provides that certain uses in a Public Use District require a special permit from the ZBA. Among these uses are enumerated accessory uses, including windmills. Section 240-13 of the Bylaw defines “accessory use” as: “A use of land or building on the same lot with, and customarily incidental but secondary to, a permitted use except that if more than 30% of the floor area or 50% of the lot area is occupied by such use, it shall no longer be considered ‘accessory.’ ” (Ex. 1.)
Article XXXIV of the Bylaw, “Windmills,” contains one section, 240-166, “Special Permit required; criteria,” which states that any lot owner may apply for a special permit to allow construction and operation of a windmill. (Ex. 1.) Section 240-166 incorporates by reference the Bylaw’s general special permit requirements and also states that the ZBA shall consider adverse impacts on the neighborhood including noise. The ZBA has the power to impose conditions on the grant of a windmill permit. (Ex. 1.) Section 240-166, as well as sections of the Bylaw applicable to specific zoning districts respectively, was added to the Falmouth Zoning Bylaw by Warrant Article 50, at a Special Town Meeting held in 1981.[6] Article 50(2) evidences a legislative intent to “generally allow windmills throughout the Town, by special permit from the Board of Appeals.” (Ex. 6.)
Gore issued the building permit for Wind I on June 30, 2009, after determining that a special permit was not necessary under the Bylaw. He determined that Wind I is allowed as of right under Section 240-30B as a municipal purpose and issued a building permit for the construction of Wind I, without requiring a special permit from the ZBA. Gore further determined that Wind I was not an accessory use at the WWTF; rather, he viewed Wind I as an integral component of the facility. The footprint of Wind I comprises less than 50% of the area of the site and less than 30% of the area of the WWTF.
There was no credible evidence admitted during the trial that any of the plaintiffs had reasonable notice, actual or constructive, of the issuance of the building permit for Wind I on June 30, 2009 sufficient to require them to appeal within the thirty-day period set forth in G.L.c. 40A, §15.
The cost to construct Wind I was approximately $5,200,000. To finance the construction, the Town, acting on town meeting authorization, borrowed $4,992,000 and issued municipal bonds and notes in said amount payable over a 20-year period. The Town also sold approximately $1,100,000 in renewable energy certificates based on projected power generation.
Wind I became operational in March of 2010. Wind I provides electricity to run the WWTF and it is con *253 nected to the plant “behind the meter” so the plant uses electricity from the turbine directly without an intermediary utility company. However, Wind I does not always provide all the power for the plant; when the turbine is shut down or there is no wind, the Town purchases power to run the plant from NStar. In an average year, Wind I produces approximately 3,500,000 kilowatt hours of electricity and the WWTF utilizes approximately 1,211,000 kilowatt hours of electricity. Any excess power generated by Wind I is routed through the plant’s electric meter in a process known as “net metering” and sold to NStar. NStar pays the Town for this power and the payments are deposited to an account authorized by Article 18 of the November 9, 2009 Annual Town Meeting and used “to offset the other energy or energy related expenses of the Town.” Wind I generated $456,554.65 in revenue to the Town for the fiscal year ending June 30, 2010.
On August 25, 2010, the Andersons, through their attorney, filed a letter with Gore alleging that Wind I violated the Falmouth Zoning Bylaw and requesting that he take enforcement action. (Ex. 2.) Gore responded by letter dated September 24, 2010, denying enforcement action. (Ex. 3.) The Andersons filed a notice of appeal with the ZBA on October 4, 2010. (Ex. 4.) At all relevant times, the ZBA consisted of five regular members and one alternate member, but due to recusals, a quorum of four members participated in the decision. On February 17, 2010, the four voting members of the ZBA voted 3-1 in favor of overturning the decision of the Building Commissioner. However, they did not achieve the four votes necessary to overturn the decision.
The plaintiffs are all residents of the Town who reside between 1,300 feet and 3,200 feet from Wind I. Todd Drummey, Mark Cool, and Barry Funfar each testified credibly that the operation of Wind I produces noise which interferes with their sleep. These plaintiffs further testified credibly that the operation of Wind I has caused them to experience exhaustion, headaches, dizziness, nausea, and difficulties with concentration and memory. Accordingly, this Court finds that the plaintiffs are aggrieved within the meaning of G.L.c. 40A, §§8 and 17.
The Andersons filed their Superior Court action on March 12, 2011, appealing the ZBA’s decision pursuant to G.L.c. 40A, §17 and seeking an order that the Town cease operation of Wind I until a special permit is applied for and issued. The remaining plaintiffs filed their action on March 21, 2011. The appeals of the plaintiffs in both actions, BACV2011-166 and BACV2011-168, were consolidated for trial.
RULINGS OF LAW
I. COURTS JURISDICTION
As a threshold matter, this Court must address two issues which bear on the court’s jurisdiction to hear the merits of the plaintiffs’ appeals under General Laws Chapter 40A (“the Zoning Act”).
A. STANDING
Aggrieved person status is a jurisdictional prerequisite to both a §8 appeal to the ZBA and a §17 appeal to Superior Court. 81 Spooner Road, LLC v. Zoning Bd. of App. of Brookline, 461 Mass. 692, 700 (2012); Green v. Board of App. of Provincetown, 404 Mass. 571, 573-74 (1989); Rogel v. Collinson, 54 Mass.App.Ct. 304, 315 (2002). To prove standing, the plaintiff must demonstrate that he has suffered a legally cognizable injury to a right or interest that the Zoning Act is intended to protect, either explicitly or implicitly. 81 Spooner Road, LLC v. Zoning Bd. of App. of Brookline, 461 Mass, at 700. See also Marashlian v. Zoning Bd. of App. of Newburyport, 421 Mass. 719, 722 (1996) (plaintiffs concern must be legitimately within scope of zoning laws). The plaintiff must establish by direct facts and not by speculative personal opinion that his injury is special and different from the concerns of the community at large. 81 Spooner Road, LLC v. Zoning Bd. of App. of Brookline, 461 Mass, at 701; Monks v. Zoning Bd. of App. of Plymouth, 37 Mass.App.Ct. 685, 689 (1994), rev. den., 419 Mass. 1106 (1995). Whether an individual is aggrieved is a question of fact for the trial judge. Marashlian v. Zoning Bd. of App. of New-buryport, 421 Mass, at 721; Sheehan v. Zoning Bd. of App. of Plymouth, 65 Mass.App.Ct. 52, 54 (2005).
Here, the plaintiffs have established that the operation of Wind I creates noise which interferes with activities such as sleeping, and noise is listed as an adverse impact to be considered in permitting a windmill under Section 240-166 of the Bylaw. Cf. Monks v. Zoning Bd. of App. of Plymouth, 37 Mass.App.Ct. at 688 (plaintiffs were aggrieved by visual impact of cell tower where town’s bylaw conditioned special permit on requirement that structure not detract from visual character of neighborhood). In addition, the plaintiffs have given credible testimony that they have suffered health impacts since the operation of Wind I not experienced by Falmouth residents located further away. Pursuant to Section 240-1, one purpose of the Bylaw is “to conserve health,” and Section 240-166 requires consideration of whether a windmill will create “adverse impacts on the neighborhood.” Accordingly, the plaintiffs are aggrieved within the meaning of G.L.c. 40A, §§8 and 17.
B. TIMELINESS OF APPEAL
Before seeking judicial review of a zoning decision in the Superior Court, the plaintiff must exhaust his administrative remedies under the Zoning Act in a timely manner. See Connors v. Annino, 460 Mass. 790, 797 (2011); Quincy v. Planning Bd. of Tewksbury, 39 Mass.App.Ct. 17, 20 (1995); Vokes v. Avery W. Lovell, Inc., 18 Mass.App.Ct. 471, 482-83, rev. den., 393 Mass. 1103 (1984). Section 8 of the Zoning Act allows any person aggrieved by “an order or decision” of the Building Commissioner to appeal to the local ZBA. G.L.c. 40A, §8. Pursuant to § 15 of the Zoning Act, such an appeal must be filed within thirty days from the *254 date of the order or decision being challenged. G.L.c. 40A, §15. The issuance of a building permit is an “order or decision” which, under §§8 and 15, must be appealed to the ZBA within thirty days after the permit has issued. Connors v. Annino, 460 Mass, at 794; Elio v. Zoning Bd. ofApp. of Barnstable, 55 Mass.App.Ct. 424, 427, rev. den., 437 Mass. 1109 (2002). One aggrieved by the ZBA’s decision may then appeal to the Superior Court by bringing a lawsuit within twenty days after the filing of the adverse decision with the town clerk. G.L.c. 40A, §17.
At the same time, §7 of the Zoning Act authorizes the Building Commissioner to enforce the local zoning bylaw in response to a written request for enforcement. If he declines to act, he must notify the requesting party in writing within fourteen days of receipt of the request for enforcement. G.L.c. 40A, §7. Pursuant to §8 of the Zoning Act, a person aggrieved by the inability to obtain enforcement action from the Building Commissioner may appeal to the local ZBA. G.L.c. 40A, §8. Again, such an appeal must be taken within thirty days from the date of the order or decision, which is the date of the Building Commissioner’s written response to the request for enforcement. G.L.c. 40A, §15; Connors v. Annino, 460 Mass, at 794; Elio v. Zoning Bd. ofApp. of Barnstable, 55 Mass.App.Ct. at 429. Appeal to the Superior Court may then proceed under §17.[7]
The Town contends that this Court lacks jurisdiction over the plaintiffs’ complaints because they failed to appeal to the ZBA within thirty days of Gore’s issuance of the Wind I building permit on June 30, 2009. The plaintiffs, however, contend that they timely sought administrative review by appealing to the ZBA within thirty days of Gore’s September 24, 2010 letter denying their request for enforcement of the Bylaw.
A party with “adequate notice” of the issuance of a building permit who claims to be aggrieved because the permit violates the zoning code must appeal to the ZBA within thirty days of the issuance of the permit under §§8 and 15, and may not bypass that procedure by foregoing an immediate appeal and then filing a §7 enforcement proceeding at a later date. Connors v. Annino, 460 Mass, at 796; Gallivan v. Zoning Bd. of App. of Wellesley, 71 Mass.App.Ct. 850, 857, rev. den., 452 Mass. 1104 (2008). If a party with adequate notice fails to appeal to the ZBA within thirty days of the issuance of a building permit, the Superior Court lacks jurisdiction to entertain a zoning appeal. Connors v. Annino, 460 Mass, at 797. If, however, an aggrieved party can establish that he lacked adequate notice of the issuance of a building permit, he may pursue §7 enforcement as an alternative remedy and take a subsequent appeal pursuant to §§8 and 15. Id. See also Gallivan v. Zoning Bd. ofApp. of Wellesley, 71 Mass.App.Ct. at 855 (§7 mandamus to compel enforcement only available where party not on sufficient notice to take timely appeal from issuance of permit); Fitch v. Board of App. of Concord, 55 Mass.App.Ct. 748, 781 (2002) (noting that generally there is no public notice of issuance of building permit); Vokes v. Avery W. Lovell, Inc., 18 Mass.App.Ct. at 482 n.17 (noting that aggrieved party might be unaware of permit issuance because there is no public notice and holder has six months to commence work).
There is no bright line rule defining adequate notice, and whether a party has received such notice is a question of fact that depends on the particular circumstances. Connors v. Annino, 460 Mass, at 798 n.10. Notice of the issuance of a building permit may be actual or constructive. Richardson v. Board of App. of Chilmark, 81 Mass.App.Ct. 912, 913 (2012); Gallivan v. Zoning Bd. ofApp. of Wellesley, 71 Mass.App.Ct. at 859. Here, the plaintiffs have demonstrated that they did not receive actual notice of Gore’s issuance of the Wind I building permit on June 30, 2009 or within thirty days thereafter. Cf. Connors v. Annino, 460 Mass, at 792-93 (abutter had actual notice of issuance of building permit where although he did not receive written notice, he learned about it ten days later while visiting the building department on an unrelated matter) . They did not receive written notice from the Town, nor did the Town announce the issuance of the permit in a local newspaper. See 81 Spooner Road, LLC v. Zoning Bd. ofApp. of Brookline, 78 Mass.App.Ct. 233, 244 (2010), affd, 461 Mass. 692 (2012).
Constructive notice is sufficient notice to place on the plaintiff a duty of inquiry regarding the issuance of the building permit. Richardson v. Board ofApp. of Chilmark, 81 Mass.App.Ct. at 913. Here, the plaintiffs knew about the building permit application for Wind I which might, under some circumstances, have placed them on inquiry notice. See Gallivan v. Zoning Bd. of App. of Wellesley, 71 Mass.App.Ct. at 859 (notice to statutory abutter that application for building permit for modular home had been filed with respect to adjacent property put her on inquiry notice to go to building department and review application for potential zoning violations). However, given that at least three to four years passed between the application and the ultimate issuance of the permit, this Court cannot conclude that mere knowledge of the application created constructive notice. See Guaranteed Builders & Deuel., Inc. v. Bylinski, 2012 Mass.Super. LEXIS 6 at *11 (Feb. 2, 2012) (Tucker, J.) [29 Mass. L. Rptr. 377] (knowledge of application of building permit did not impose on plaintiff “a duty to make monthly calls to the building inspector”).
That several Town Meetings between 2006 and 2009 authorized construction and financing, numerous Board of Selectmen meetings between 2008 and 2009 discussed the project, and numerous Falmouth Energy Committee meetings between 2008 and 2009 discussed the project does not establish that the plaintiffs should have had notice that the building permit was issued on June 30, 2009, even if they *255 attended some of those meetings. It typically takes years to obtain the myriad approvals required from various town agencies for a project of this magnitude, and progress on one front does not necessarily indicate imminent issuance of a building permit. See Guaranteed Builders & Devel., Inc. v. Byllrtski, 2012 Mass.Super. LEXIS 6 at *10-11, supra (Town Conservation Commission approval, Board of Health approval, clearing of land, and drilling of well did not place plaintiff on sufficient notice to require him to inquire about building permit issuance). Finally, it does not appear that construction of Wind I commenced during the appeal period so as to place the plaintiffs on notice. See 81 Spooner Road, LLC v. Zoning Bd. ofApp. of Brookline, 78 Mass.App.Ct. at 244.
The plaintiffs have established that under the circumstances, this is not a case where the issuance of the Wind I building permit should have come to their attention within thirty days of June 30, 2009. See id. Cf. Janey v. Board of App. ofWareham, 2012 Mass.App. Unpub. LEXIS 915 at *2-3 (Rule 1:28) (plaintiff had constructive notice of issuance of building permit where he attended auction at which land was sold and advertised as suitable for single-family dwelling, he observed surveyors marking property line and constructing foundation, and he attended conservation commission meeting at which he raised issue of square footage violation); Richardson v. Board of App. of Chilmark, 81 Mass.App.Ct. at 913 (neighbor had constructive notice of issuance of building permit where she had viewed proposed construction plans, met with town officials to raise concerns, and hired lawyer to assist her in fighting project). There simply was no credible evidence presented at trial to suggest that the plaintiffs had actual or constructive notice of the issuance of the Wind I building permit. Absent adequate notice affording the plaintiffs the opportunity to bring their challenge within the G.L.c. 40A, §15 thirty-day period, this court may properly consider the plaintiffs’ claims under G.L.c. 40A, §7.
II. MERITS OF APPEAL
The task of the Superior Court in reviewing de novo a local zoning decision under G.L.c. 40A, §17 is to determine the legal validity of the ZBA’s decision based on the facts found by the court, giving no evidentiary weight to the board’s findings. Roberts v. Southwestern Bell Mobile Sys., Inc., 429 Mass. 478, 485-86 (1999); Pendergast v. Board of Appeals of Barnstable, 331 Mass. 555, 558-59 (1954). Judicial review is circumscribed and the board’s decision cannot be disturbed unless it is based on a legally untenable ground, or is unreasonable, whimsical, capricious or arbitrary. Shirley Wayside Ltd. P’ship v. Board ofApp. of Shirley, 461 Mass. 469, 475 (2012); MacGibbon v. Board of App. ofDuxbury, 356 Mass. 635, 639 (1970); Killorin v. Zoning Bd. ofApp. of Andover, 80 Mass.App.Ct. 655, 660, rev. den., 461 Mass. 1103 (2011).
The plaintiffs contend that the Building Commissioner, and the ZBA by default, incorrectly interpreted the Bylaw to allow the issuance of a building permit for Wind I without a special permit. The court may reverse a ZBA decision which is based on an erroneous interpretation of a local bylaw. Shirley Wayside Ltd. P’ship v. Board ofApp. of Shirley, 461 Mass, at 475; MacGibbon v. Board ofApp. ofDuxbury, 356 Mass, at 639. However, the court accords substantial deference to a local board’s reasonable interpretation of its own zoning bylaw, as long as there is a rational relationship between its decision and the purpose of the bylaw it is charged with enforcing. Shirley Wayside Ltd. P’ship v. Board ofApp. of Shirley, 461 Mass, at 475; Wendy’s Old Fashioned Hamburgers of New York, Inc. v. Board ofApp. of Billerica 454 Mass. 374, 381 (2009); Mauri v. Zoning Bd. ofApp. of Newton, 83 Mass.App.Ct. 336, 342 (2013).
The court determines the meaning of a bylaw by the ordinary principles of statutory construction, looking to the language as the principal source of insight into legislative intent. Shirley Wayside Ltd. P’ship v. Board ofApp. of Shirley, 461 Mass, at 477; Iodice v. Newton, 397 Mass. 329, 332-33 (1986). A zoning bylaw should be construed sensibly, with regard to its underlying purposes. North Shore Realty Trust v. Commonwealth, 434 Mass. 109, 112 (2001); Valcourt v. Zoning Bd. ofApp. of Swansea, 48 Mass.App.Ct. 124, 129 (1999), rev. den., 430 Mass. 1114 (2000). The court will enforce unambiguous language according to its plain meaning unless a literal construction would yield an absurd or unworkable result. Shirley Wayside Ltd. P’ship v. Board ofApp. of Shirley, 461 Mass, at 477. The court will give'effect to all provisions of the bylaw, so that no part will be inoperative or superfluous, and if possible, will construe the bylaw as a harmonious whole. Shirley Wayside Ltd. P’ship v. Board ofApp. of Shirley, 461 Mass, at 477; Valcourt v. Zoning Bd. ofApp. of Swansea, 48 Mass.App.Ct. at 129.
A. APPLICATION OF ARTICLE XXXIV TO MUNICIPAL PURPOSE
The plaintiffs first contend that the Town was required to obtain a special permit for Wind I under Article XXXIV (§240-166) of the Bylaw, “Windmills,” which provides: “Any petitioner . . . may apply for a special permit to allow construction and operation of a windmill.” Article XXXTV provides that in deciding whether to grant a special permit for a windmill, the ZBA shall consider the criteria in §240-216, the general provision governing all special permits in the Town. Section 240-216 requires the ZBA to determine that the proposed use will not have adverse effects which overbalance its beneficial effects on the neighborhood or the Town. It also requires the ZBA to consider the impact on the *256 neighborhood’svisual character, and compliance with all sections of the Bylaw, including the performance requirement in §240-110 that a use not be permitted if it “would be offensive because of injurious or obnoxious noise, vibration, smoke, gas, fumes, odors, dust or other objectionable features . . .’’In addition to consideration of the standard special permit considerations, Article XXXIV requires the ZBA, when considering a windmill permit application, to “ensure, through the use of appropriate engineering data, that there shall be no adverse impacts on the neighborhood, in terms of television interference, ice throw, prop throw, noise, etc.” See §240-166B. In addition, Article XXXIV requires a use permit for the operation of a windmill, which may be issued only after inspection and certification of compliance by a registered professional engineer, and a determination by the Building Commissioner that all special permit requirements have been met. See §240-166D.[8]
The plaintiffs contend that Wind I was subject to all these requirements because Article XXXIV expressly applies to “any petitioner” and does not exempt the Town, a municipal use, or location in a Public Use District from the need to obtain a special permit to construct and operate a windmill. A town is bound to comply with any general provision of its zoning bylaw applicable to it. See Pierce v. Wellesley, 336 Mass. 517, 523 (1957). Cf. Bourne u. Plante, 429 Mass. 329, 332 (1999) (noting that state agency created by Legislature generally is immune from local zoning regulations when performing an essential governmental function). A town may exempt itself from certain zoning restrictions. Pierce v. Wellesley, 336 Mass, at 524. However, it is undisputed that Article XXXTV does not expressly exempt the Town from the special permit requirement.
Nonetheless, the Building Commissioner, and the ZBA by default, concluded that Wind I is a use permitted as of right in a Public Use District pursuant to §240-30B of the Bylaw, which permits: “All municipal purposes, including the administration of government, parks, playgrounds, recreation buildings, Town forests, watershed, water towers and reservoirs, beaches, fire and police stations and armories.”[9] There is no merit to the plaintiffs’ contention that because §240-30B does not expressly list windmills, they are not a valid municipal purpose use. See Board of Selectmen of Hatfield v. Garvey, 362 Mass. 821, 824 (1973) (when interpreting bylaw, express mention of one matter excludes by implication other similar matters not mentioned). In the view of this Court, the list of municipal uses is illustrative, not limiting. See Doe v. Blandford, 402 Mass. 831, 834 (1988).
The plaintiffs further argue that the phrase “municipal purposes” should be narrowly interpreted and restricted to purposes which are similar to the uses listed. See Awuah v. CoverallN. Amen, Inc., 460 Mass. 484, 496 (2011) (when statute lists elements in a series, general phrases construed as restricted to elements similar to specific elements listed). However, the canon of construction invoked by the plaintiffs is most appropriate when a series of several items concludes with more general, disputed language. See Powers v. Freetown-Lakeville Reg’l Sch. Dist Comm,, 392 Mass. 656, 660 n.8 (1984); Mammoet USA, Inc. v. Entergy Nuclear Generation Co., 64 Mass.App.Ct. 37, 41 (2005). See also Perlera v. Vining Disposal Serv., Inc., 47 Mass.App.Ct. 491, 496, rev. den., 430 Mass. 1108 (1999) (this canon of construction is not to be applied mechanistically whenever string of terms is separated by commas). Here, the general phrase “municipal purposes” precedes the specific examples and is introduced by the broad modifier “all.” Accordingly, municipal purposes are not restricted to those similar to the examples provided.
The Building Commissioner properly determined that the operation of a wind turbine to power the Town’s wastewater treatment facility and provide excess electricity at a discounted rate to offset Town energy expenses is a municipal purpose. See Ouellet v. Board ofApp. of Dover, 355 Mass. 77, 78 (1968) (“municipal” use means local matter relating to city or town, as opposed to state or federal government); Rose v. Commissioner of Pub. Health, 361 Mass. 625, 626 (1972) (town owned and operated sanitary landfill dump located in residential district was “municipal use” permitted as of right); Gilmore v. Quincy, 346 Mass. 22, 24 (1963) (erection and maintenance of municipal incinerator was “municipal use” permitted as of right in city property district); Pierce v. Wellesley, 336 Mass, at 518 (operation of parking lot was municipal use). As a municipal use, Wind I was permitted as of right in the Public Use District unless, as urged by the plaintiffs, §240-30B is trumped by Article XXXIV.
Section 240-18 of the Bylaw provides: “Where an activity might be classified under more than one of the following uses, the more specific classification shall govern; if equally specific, the more restrictive shall govern ...” The plaintiffs contend that Article XXXIV applies to all windmills constructed anywhere in the Town, regardless of their location in a particular district or the nature of their use, and thus overrides all other applicable provisions of the Bylaw. They argue that under §240-18, the more specific provisions of Article XXXIV governing windmills supercede the more general provisions relating to municipal uses in a Public Use District.[10] In interpreting a local bylaw, the court does not look at the bylaw provisions in isolation, but reads them in complete context in order to give them a sensible meaning within that context. Board of Selectmen of Hatfield v. Garvey, 362 Mass. 821, 826 (1973); Guardione v. Longmeadow, 74 Mass.App.Ct. 118, *257 120 (2009); Livoli v. Zoning Bd. of App. of Southborough, 42 Mass.App.Ct. 921, 922 (1997).
A use allowed as of right is, by definition, not subject to special permission from the local zoning authority, although reasonable conditions may be imposed on the use through site planning. See Duteau v. Zoning Bd. of App. of Webster, 47 Mass.App.Ct. 664, 667-68 (1999) (by enacting bylaw that allows use as matter of right, town inhabitants have previously resolved, in legislative sense, considerations of comfort, health and safety; if use allowed by right, board lacks authority to prohibit it by requiring special permit); Prudential Ins. Co. ofAmer. v. Board of App. of Westwood, 23 Mass.App.Ct. 278, 281 (1986) (use as of right and use dependent on discretion are mutually exclusive). Moreover, case law has recognized that the statutory purposes of zoning may be served by a bylaw which relieves municipal uses from otherwise applicable requirements such as a special permit. See Rose v. Commissioner of Pub. Health, 361 Mass, at 631-32 (town properly built sanitary landfill in residential district as municipal use allowed as of right); Sinn v. Board of Selectmen of Acton, 357 Mass. 606, 609-10 (1970) (bylaw properly exempted all municipal uses in any district from use restrictions); Pierce v. Wellesley 336 Mass, at 524 (town could reserve to itself privilege of carrying on town functions in any zone while requiring special permit for others to conduct same use). It was thus reasonable for the Building Commissioner to reconcile the two provisions at issue by interpreting the Bylaw to mean that Article XXXIV, which sets forth procedures and requirements for windmill special permits, simply does not apply in the limited circumstance where the Town itself desires to construct and operate a windmill for municipal purposes in a district where all such purposes are permitted as of right.
It is also reasonable, however, to interpret the Bylaw as do the plaintiffs; to treat windmills as a unique use governed in all cases by the specific provisions of Article XXXIV. Where there are two equally plausible readings of legislative language, the court defers to the reasonable interpretation adopted by the officer charged with enforcing it. See Falmouth v. Civil Serv. Comm’n, 447 Mass. 814, 821 (2006). See also Wayside Ltd. P’ship v. Board of App. of Shirley, 461 Mass, at 475; Wendy’s Old Fashioned Hamburgers of New York, Inc. v. Board of App. of Billerica, 454 Mass, at 381; Mauri v. Zoning Bd. of App. of Newton, 83 Mass.App.Ct. at 342 (court accords substantial deference to local board’s reasonable interpretation of its own zoning bylaw, as long as there is rational relationship between its decision and purpose of bylaw). It was not irrational for the Town to conclude that in most cases a windmill is a use with such potential to impact neighbors so as to require special permission, but in the case of a municipal windmill, the benefits of the use justify allowance as of right. Accordingly, this Court cannot conclude that the Building Commissioner erred in issuing a building permit under §240-30B without a specialpermit.
B. SPECIAL PERMIT FOR ACCESSORY USE
The plaintiffs further contend that even if Article XXXTV does not govern Wind I, the Town was required to obtain a special permit under §240-33G(5) of the Bylaw, which requires a special permit for enumerated accessoiy uses in a Public Use District, including windmills. However, this Court agrees with the Town that where a municipal purpose use is allowed as of a right in a particular district, it is permitted regardless of whether it is a primaiy or accessoiy use. It would make little sense to authorize the Town to construct a windmill as the primaiy use on the site as of right while requiring it to obtain a special permit for a windmill constructed as a less intensive accessoiy use. See Shirley Wayside Ltd. P’ship v. Board of App. of Shirley, 461 Mass, at 477 (court should not construe bylaw in manner that yields absurd result). Accordingly, the Town was not required to obtain a special permit under §240-33G(5).
Nonetheless, even if §240-33G(5) applies, the Building Commissioner reasonably determined that Wind I is not an accessoiy use at the site. Section 240-13 of the Bylaw defines “accessoiy use” as: “A use of land or building on the same lot with, and customarily incidental but secondaiy to, a permitted use except that if more than 30% of the floor area or 50% of the lot area is occupied by such use, it shall no longer be considered ‘accessory.’ ” An accessoiy use is one which is dependent on or pertains to the principal use of the land. Harvard v. Maxant, 360 Mass. 432, 437 (1971). The term “incidental” in the definition of ac-cessoiy use means a use which is subordinate and minor in significance, but having a reasonable relationship to the primaiy use. Henry v. Board of App. of Dunstable, 418 Mass. 841, 845 (1994); Harvard v. Maxant, 360 Mass, at 438; Gallagher v. Board of App. of Acton, 44 Mass.App.Ct. 906, 907 (1997), rev. den., 427 Mass. 1101 (1998).
As noted by the plaintiffs, Wind I powers the WWTF and therefore bears a reasonable relationship to that use. However, the majority of the time, Wind I generates excess power, producing revenue which is used to reduce the Town’s general energy expenses. Even if the WWTF shut down, Wind I would remain in service and continue to operate as a municipal power source. Accordingly, Wind I is neither dependent on the WWTF nor minor in significance. Cf. Brockton Power Co., LLC v. Brockton, 2012 Mass.App. Unpub. LEXIS 1192 at *5 (Rule 1:28), rev. den., 464 Mass. 1103 (2013) (fact that one use is interconnected with another principal use on another lot does not render it an accessory use). The *258 Building Commissioner therefore reasonably determined that Wind I was not an accessory use.
Moreover, in order to constitute an accessory use under the Bylaw, the use must be “customarily” incidental to a permitted use. The term “customarily” means commonly, habitually, and by long practice established as reasonably associated with the primary use. Harvard v. Maxant, 360 Mass, at 438-39; Simmons v. Zoning Bd. of App. of Newburyport, 60 Mass.App.Ct. 5, 9 (2003), rev. den., 441 Mass. 1103 (2004). In applying the test of custom, the court considers the size of the lot in question, the nature of the primary use, the use made of adjacent lots by neighbors, and the economic structure of the area. Id. With respect to the actual incidence of similar uses on other properties, geographical differences should be taken into account, and the use should be more than unique or rare, even though it is not necessarily found on a majority of similarly situated properties. Harvard v. Maxant, 360 Mass. at 439; Simmons v. Zoning Bd. of App. of Newburyport, 60 Mass.App.Ct. at 9. The court extends a measure of deference to the factual determination of local officials of what is customary. Simmons v. Zoning Bd. of App. of Newburyport, 60 Mass.App.Ct. at 10. See also Burnham v. Hadley, 58 Mass.App.Ct. 479, 485 (2003) (noting that board exercises great discretion in determining whether use is accessory). A turbine such as Wind I does not appear to be a use which is commonly, habitually, and by long practice established as reasonably associated with a municipal use such as a wastewater treatment plant. [11] Accordingly, the Building Commissioner, and the ZBA by default, did not err in determining that Wind I was not an accessory use to the WWTF requiring a special permit under §240-33(0(5) of the Bylaw.
ORDER FOR JUDGMENT
For the foregoing reasons, it is hereby ORDERED that the March 3, 2011 decision of the ZBA be AFFIRMED and that judgment enter in favor of defendants Town of Falmouth Zoning Board of Appeals and Neil and Elizabeth Anderson in Civil Action No. 2011-00166. It is further ORDERED that judgment enter in favor of defendants Town of Falmouth Zoning Board of Appeals; Dennis Murphy, Ronald Erickson, Kenneth Foreman, Matthew McNamara, Patricia Favulli and Patricia Johnson, as Members of the Falmouth Zoning Board of Appeals; Eladio Gore, as Town of Falmouth Building Commissioner; and the Town of Falmouth in Civil Action No. 2011-00168.

Windmill is defined as: “Any device which converts wind energy to mechanical or electrical energy.”

The Bylaw expressly requires a special permit for an accessory windmill use within the following districts, without mentioning windmills as a permitted primary use: Single Residence, §240-23G(5); General Residence, §240-28H(5); Public Use, §240-33G(5); Agricultural, §240-38G(5); Light Industrial A, §240-57L(3); and Light Industrial B, §240-63G(2). Article X, which governs Business districts, requires a special permit for a windmill in B-l, B-2 and B-3 Districts without mentioning accessory use. See §240-51A(12). Three districts make no mention at all of windmills: Marine (Article IX), Buffer Space (Article XIII), and Senior Care Retirement (Article XIIIA).

Pursuant to §7, where property has been improved under a building permit, an action based on alleged violation of a local bylaw must be commenced within six years of the alleged violation. G.L.c. 40A, §7.

Although the plaintiffs credibly testified that they have experienced health difficulties and other negative quality of life impacts from Wind I, the law precludes this Court from considering those impacts in reviewing the ZBA’s decision. Because the ZBA authorized Wind I without requiring a special permit, this Court has no occasion to consider the factors such as noise, vibration, and other adverse impacts on the neighborhood set forth in Article XXXIV. Rather, judicial review in this matter is confined to the proper legal interpretation of the Bylaw. In contrast, had the ZBA required and issued a special permit for Wind I, judicial review would encompass whether the ZBA adequately considered the project’s adverse impacts. See Medeiros v. Board of Aldermen of Woburn, 350 Mass. 767, 767 (1966); Cummings v. Gloucester, 28 Mass.App.Ct. 345, 351-52, rev. den., 407 Mass. 1102 (1990) (in issuing special permit, local authority must consider criteria set forth in bylaw before reaching decision). See also Britton v. Zoning Bd. of App. of Gloucester, 59 Mass.App.Ct. 68, 73, rev. den., 440 Mass. 1105 (2003) (in reviewing issuance of special permit, court ensures that board’s decision was based on proper criteria contained in bylaw and then determines, based on facts found de novo, whether decision was arbitrary, capricious, unreasonable, or in excess of board’s authority).

A11 municipal purposes are also permitted as of right in the Business District, the Light Industrial A District, and the Light Industrial B District.

The plaintiffs also invoke the canon of statutory construction that a general statute must yield to a specific statute on the same subject. That canon applies only when the two statutes cannot reasonably be reconciled. See Alliance to Protect Nantucket Sound, Inc. v. Department of Pub. Utilities (No. 1), 461 Mass. 166, 184 (2011).

A wind turbine which powers municipal facilities and produces revenue in the form of energy credits for the Town is substantially different from a turbine constructed to power a single residence. Cf. Hamsby v. Board of Zoning App. of the AreaPlan Comm' n of Warrick Cty., 932 N.E.2d 1251, 1255-56 (Ind.Ct.App. 2010), rev. den., 950 N.E.2d 1204 (Ind. 2011); Tink-Wig Mountain Lake Forest Property Owners Ass’n v. Lackawaxen Township Zoning Hearing Bd,, 986 A.2d 935, 941 (Pa.Commw.Ct. 2009) (finding wind turbine to be accessory use to residence where intended to power only that residence, viewing wind as new technology akin to solar panels, a long-approved accessory use).