Timothy HAMBY, et al., Appellants–
Plaintiffs,

v.

BOARD OF ZONING APPEALS OF
The AREA PLAN COMMISSION OF
WARRICK COUNTY and the Board
of Commissioners of Warrick County,
Appellees–Respondents.

No. 87A04–0912–CV–700.

Court of Appeals of Indiana.

Aug. 31, 2010.

Rehearing Denied Nov. 17, 2010.

Leslie C. Shively, Shively & Associates,
P.C., Evansville, IN, Attorney for Appellants.

Maurice E. Doll, Morrie Doll & Associates, LLC, Newburgh, IN, Attorney for Appellees.

## OPINION

BROWN, Judge.

Timothy and Theresa Hamby, Greg and Cari Charness, Kevin and Kristina Coons, John Keil, Julia Pickens, Andres and Andrea Solis, Jack and Cindy Stierwalt, and Thomas and Jennifer Weber (collectively, "Homeowners") appeal the trial court's order in favor of the Board of Zoning Appeals of the Area Plan Commission of Warrick County (the "BZA") and the Board of Commissioners of Warrick County (the "Commissioners," and collectively with the BZA, the "County"). Homeowners raise one issue, which we revise and restate as whether the trial court erred in denying Homeowners' claim for declaratory relief. We affirm.

The relevant facts are not in dispute.[1] David Johnson and Phyllis Stilwell (the

---

1. We note that the docket reveals that a tran-    script was not requested in Homeowners' no-

"Applicants"), through their contractor Morton Energy, filed an application seeking. a variance from the requirements as set forth in the Comprehensive Zoning Ordinance for Warrick County, Indiana "to allow an Improvement Location Permit to be issued for a wind turbine exceeding the maximum height requirement in an 'R–2' Multiple Family Zoning District. . . ." Appellants' Appendix at 47. The Applicants sought to erect the residential wind turbine "to use an alternative power source . . . to reduce their electric cost do [sic] to the increasing high utility bills, also reducing green house gases." *Id.* The variance sought to allow an "additional 20ft" which would "allow for the proper operation" of the turbine. *Id.* On September 24, 2008, the BZA held a hearing on the matter, and on October 22, 2008 it granted the variance.

On November 20, 2008,[2] Homeowners filed a Verified Petition for Writ of Certiorari, Judicial Review and Declaratory Judgment containing two counts: Count I alleged that the variance granted by the BZA was "unsupported by substantial evidence; was arbitrary and capricious; and was in all other respects contrary to Indiana law;" and Count II alleged that "a free standing wind turbine is not a permitted use under the zoning ordinance in the R–2 district." *Id.* at 22–23. On December 10, 2008, the BZA filed a motion to dismiss for failure to join an indispensible party and for failure to state a claim. On February 9, 2009, the trial court held a hearing and on March 7, 2009 issued an order granting the writ of certiorari under Count I and remanding to the BZA "for further findings under I.C. 36–7–4–918.5(a)." *Id.* at 9. Regarding Count II, the court granted the BZA's motion to dismiss for failure to join an indispensable party, namely the Commissioners, and were given ten days to amend Count II. On April 27, 2009, the BZA held a public meeting, entered "Special Findings of Fact" numbered 1–6, and again approved the Applicants' requested variance. *Id.* at 42–47.

On March 18, 2009, the Homeowners filed an amended Count II Claim for De-

tice of appeal and consequently a transcript was not included in the record. Ind. Appellate Rule 9(F)(4) requires that "[t]he Notice of Appeal shall designate all portions of the Transcript necessary to present fairly and decide the issues on appeal." The Indiana Supreme Court has stated that the "failure to include a transcript works a waiver of any specifications of error which depend upon the evidence." *In re Walker*, 665 N.E.2d 586, 588 (Ind.1996) (quoting *Campbell v. Criterion Group*, 605 N.E.2d 150, 160 (Ind.1992), and discussing prior appellate rules). However, the Court encouraged "litigants to utilize and reviewing courts to permit the utilization of procedures that minimize expense and administrative burdens for the parties and the court system." *Id.* Consequently, the Court addressed the issues presented in the appeal. *Id.*

We will attempt to address the issue raised by Homeowners. However, any arguments that depend upon the evidence presented at the hearing will be waived. *See Fields v. Conforti*, 868 N.E.2d 507, 511 (Ind.Ct.App.

2007) (citing *Walker*, 665 N.E.2d at 588; *Kocher v. Getz*, 824 N.E.2d 671, 675 (Ind. 2005) (holding that, where appellant failed to provide a transcript of the trial court's hearing on his motion to stay execution and request for bond less than the full amount of the judgment, appellant failed to demonstrate that the trial court abused its discretion)); *see also Pabey v. Pastrick*, 816 N.E.2d 1138, 1141–1142 (Ind.2004) (holding that appellants' failure to submit a transcript was not a basis for dismissing the appellant's appeal), *reh'g denied; Ctr. Townhouse Corp. v. City of Mishawaka*, 882 N.E.2d 762, 769 (Ind.Ct.App. 2008) (holding that "[b]ecause the City did not provide us with the transcript as required by Ind. Appellate Rule 9(F)(4), that argument is waived"), *trans. denied.*

2. Homeowners' verified petition is file-stamped November 20, 2008; however, the CCS reports that the petition was filed on November 24, 2008.

claratory Relief naming the Commissioners. *Id.* at 26. The BZA and the Commissioners filed their respective answers to Homeowners' claim on May 12, 2009. *Id.* at 31, 35. On September 9, 2009, the trial court heard "the arguments of counsel." *Id.* at 7. On October 27, 2009, the court held a telephonic conference and advised counsel "of the things the Court needs to rule in this matter," and on October 29, 2009 the court received copies of its requested documents. *Id.*

On November 17, 2009, the court issued an order on Counts I and II reciting facts consistent with the foregoing. On Count I, Homeowners' *"verified petition for writ of certiorari and judicial review"* regarding the variance, the court concluded that the Applicants "did not present substantial evidence nor was there substantial evidence before the BZA to show that strict application" of the applicable zoning ordinance "will result in 'practical difficulties' in the use of the [Applicants'] property as residential real estate," and reversed the BZA's decision. *Id.* at 10.

On Count II, the court concluded as follows:

> *"Count II [claim for declaratory relief] seeks this court's determination as to whether under the zoning ordinance of Warrick County a free standing wind turbine tower is permitted as an accessory use in an R–2 district."*
>
> 7. As the name implies, a declaratory judgment is a judgment, without direct coercive effect, declaring the respective rights, obligations or status of the parties. It simply declares the rights of the parties or expresses the opinion of the court on a question of law without ordering anything to be done, its distinctive characteristic being that the

declaration stands by itself and no executor process follows as of course. Accordingly, an action for a declaratory judgment is distinguished from other actions in that it does not seek execution or performance from the defendant or opposing party. *10 Ind. Law. Encycl. Declaratory Judgments § 1.* "The Indiana version of the Uniform Declaratory Judgments Act is declared to be remedial, and its purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations. The general purpose of the Act is to quiet and stabilize legal relations and thereby provide a remedy in a case or controversy when there is still an opportunity for peaceable judicial settlement." *10 Ind. Law Encycl. Declaratory Judgments § 3.*

> 8. The court concludes and declares that under the Comprehensive Zoning Article For Warrick County, a free standing wind turbine tower is permitted as an accessory use in an R–2 district upon the proper granting of a variance.

*Id.* at 10–11.

■ The sole issue is whether the trial court erred in denying Homeowners' claim for declaratory relief[3] To so decide, we are required to interpret provisions of the Comprehensive Zoning Ordinance for Warrick County, Indiana (the "Comprehensive Ordinance").

■ "Construction of a zoning ordinance is a question of law." *600 Land, Inc. v. Metro. Bd. of Zoning Appeals of Marion County,* 889 N.E.2d 305, 309 (Ind.2008) (quoting *Flying J., Inc. v. City of New Haven Bd. of Zoning Appeals,* 855 N.E.2d

---

3. The trial court's reversal of the BZA's decision to grant the variance is not being appealed.

1035, 1039 (Ind.Ct.App.2006), *reh'g denied, trans. denied* ). "We review questions of law under a de novo standard and owe no deference to a trial court's legal conclusions." *Id.* (quoting *Int'l Union of Police Ass'ns, Local No. 133 v. Ralston,* 872 N.E.2d 682, 687 (Ind.Ct.App.2007)). "When asked to interpret an ordinance, this court will apply the same principles as those employed for the construction of statutes." *Id.* (quoting *T.W. Thom Constr., Inc. v. City of Jeffersonville,* 721 N.E.2d 319, 324 (Ind.Ct.App.1999)). Since there are no factual disputes in this case, our sole task in reviewing the trial court's decision is to determine whether the zoning regulations relied upon by Homeowners apply to prohibit the construction of a wind turbine in a R–2 district. *See City of Columbus Bd. of Zoning Appeals v. Big Blue,* 605 N.E.2d 188, 191 (Ind.Ct.App.1992).

The Applicants' land was situated in a designated R–2 district. In the Comprehensive Ordinance, Article X, Section 1 states the "USE REGULATIONS" for R–2 districts as follows:

No building or structure, or part thereof, shall be erected, altered, or used, or land or water used, in whole or in part, for other than one or more of the following specified permitted uses:

(1) Any uses permitted in "R–1", "R–1A", "R–1B", "R–1C", "R–1D" districts subject to the USE REGULATIONS specified in said districts.

(2) Up to four (4) independent dwelling units.

(3) Multi family Planned Unit Development (PUD) as authorized and provided for in Article XII (C).

(4) *Uses accessory to any of the above when located on the same lot and not involving the conduct of any business, trade, occupation or profession unless otherwise specified in this Article.*

Appellants' Appendix at 50 (emphasis added). Additionally, Article II, Section 2 of the Comprehensive Ordinance defines "ACCESSORY USE OR STRUCTURE" as "[t]he term applied to the BUILDING or USE which is incidental or subordinate to and *customary* in connection with the PRINCIPAL BUILDING or USE and which is located on the same lot with such PRINCIPAL BUILDING or USE." *Id.* at 49 (emphasis added).

Homeowners argue that the definition of accessory use or structure in the Comprehensive Ordinance is "without question clear and unambiguous," in requiring "that a valid accessory use be incidental or subordinate to **and** customary in connection with the principal building or use." Appellants' Brief at 6. Homeowners argue that "[t]he word 'custom' is defined as a 'habitual practice,'" and "[t]he term 'customary', which is derived from the word custom, is defined as 'of or established by custom; usual or habitual.'" *Id.* (citing *Webster Desk Dictionary of the English Language, Random House Dictionary Classic Edition Copyright 1983* ). They further argue that "[e]ven if it could be shown that a free standing wind turbine is 'incidental or subordinate' a free standing wind turbine . . . could not by any reasonable interpretation be construed to be 'customary'." *Id.* at 7.

The County argues that "the word customary applies to the site specific real estate building or use, and not as Homeowners' content [sic] to a wider collection of structures or uses in the marketplace." Appellees' Brief at 13. The County argues that in "giving each word its plain, ordinary and usual meaning and considering the grammatical structure of the definition," the term "customary" is not "being used as a broad expanse measured of all R–2 districts['] existing accessories, but rather . . . is to be considered within the context of only *'the PRINCIPAL*

*BUILDING or USE and which is located on the same lot.'" Id.* at 13–14. The County argues that thus the "precondition 'customary' requires the consideration of any proposed accessory use or structure in comparison to the principal building or use located upon the same lot—not as measurement against the general standard of currently used accessory uses or structure[s] in all R–2 districts or in residential districts in general," and that "the purpose of Article II is to create a fact specific—site specific test." *Id.* at 14. The County also argues that "Homeowners' position[ ] that until wind turbines are 'customary' they are not permitted accessories, is a circular argument, for if a first wind turbine is never allowed to be constructed, it would be impossible for the device to become 'customary.'" *Id.* at 16. The County further states that "[b]y adopting Homeowners['] interpretation of the Ordinance, property owners could not install any wind turbine in an R–2 district and therefore [could not] benefit from the public policies enacted to spur the growth of alternative energy." *Id.* at 18.

■ Homeowners do not challenge the position that the installation of a residential wind turbine would be incidental or subordinate to the Applicants' residence. Rather, they say, the issue turns upon the phrase "customary in connection with," which is not defined in the Comprehensive Ordinance. "Undefined words in a statute or ordinance are given their plain, ordinary, and usual meaning." *600 Land, Inc.,* 889 N.E.2d at 309. We interpret an ordinance as a whole. *Big Blue,* 605 N.E.2d at 191. Additionally, "[z]oning regulations which inhibit the use of real property are in derogation of the common law and are strictly construed." *Discovery House, Inc. v. Metro. Bd. of Zoning Appeals of Mar-*

*ion County,* 701 N.E.2d 577, 579 (Ind.Ct. App.1998), *reh'g denied, trans. denied.* "We will construe the ordinance to favor the free use of land and will not extend restrictions by implication." *Saurer v. Bd. of Zoning Appeals,* 629 N.E.2d 893, 898 (Ind.Ct.App.1994).

We do not believe that the "customary in connection with" requirement for an accessory use structure should be construed so as to prevent the implementation of new technologies in residential districts. Indeed, if, as Homeowners contend, the definition requires that the intended use be demonstrated as a "habitual practice," this would preclude improvements in the standard of living since innovations in the production of energy and other technologies could not have been "established by custom; usual or habitual" at the time of the adoption of the Comprehensive Ordinance. Such a requirement would be contrary to public policy. We also note that Homeowners do not specify whether a "habitual practice" be confined to that by the Applicants' neighbors, to that within Warrick County more generally, or whether we should take a broader view. Moreover, Homeowners, as plaintiffs and appellants, have the burden of proof, and they do not include any evidence in the record to demonstrate that residential wind turbines are *uncommon* (or *not* customary) in Warrick County.[4]

Also, although we acknowledge that homes have historically received electricity from a power company via a power plant, we recognize that state and federal governments have made it a priority to encourage the implementation of renewable energy technologies such as wind power. Ind.Code § 6–1.1–12–29, which was enacted in 1979, provides:

4. We wish to again highlight that a copy of the transcript was not included in the record.

The owner of real property ... that is equipped with a wind power device[5] is entitled to an annual property tax deduction. The amount of the deduction equals the remainder of (1) the assessed value of the real property ... with the wind power device included, minus (2) the assessed value of the real property or mobile home without the wind power device.

Ind.Code § 6–1.1–12–29(b). Additionally, the federal government has incentivized residential renewable energy systems through a federal income tax credit equal to "30 percent of the qualified small wind energy property expenditures made by the taxpayer during such year...."[6] 26 U.S.C. § 25D(a)(4).

Because we construe a zoning ordinance to favor the free use of land and will not extend restrictions by implication, *see Saurer,* 629 N.E.2d at 898, and because the Comprehensive Ordinance under R–2 permits accessory use structures, we conclude that a residential wind turbine that meets all of the other requirements of the Comprehensive Ordinance is a permitted use in the R–2 zoning district. *See Flying J., Inc.,* 855 N.E.2d at 1043 (holding that "because the trial court did not construe the Zoning Ordinance to favor the free use of land," the trial court "erred by affirming the BZA's determination that the parking for trucks and RVs would not be an accessory use ..."). Homeowners have not met their burden of proving that the trial court erred in denying their claim for declaratory relief.

For the foregoing reasons, we affirm the trial court's order.

Affirmed.

NAJAM, J., and VAIDIK, J., concur.

---

**5.** A "wind power device" is defined as "a device, such as a windmill or a wind turbine, that is designed to utilize the kinetic energy of moving air to provide mechanical energy or to produce electricity." Ind.Code § 6–1.1–12–29(a).

**6.** The Internal Revenue Code defines "Qualified small wind energy property expenditure" as "an expenditure for property which uses a wind turbine to generate electricity for use in connection with a dwelling unit located in the United States and is used as a residence by the taxpayer." 26 U.S.C. § 25D(d)(4).