# FOR PUBLICATION

ATTORNEYS FOR APPELLANTS:

**JOHN F. KAUTZMAN**
**M. ELIZABETH BEMIS**
**JOHN A. HENRY**
Ruckelshaus Kautzman Blackwell
  Bemis & Hasbrook
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:

**AMEEN R. NAJJAR**
Office of Corporation Counsel
Indianapolis, Indiana

FILED
Sep 24 2014, 9:59 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ALBERT L. HAUCK and MARK WOOD | ) | |
| | ) | |
|    Appellants-Plaintiffs, | ) | |
| | ) | |
|      vs. | ) | No. 49A04-1403-PL-136 |
| | ) | |
| CITY OF INDIANAPOLIS, | ) | |
| | ) | |
|    Appellee-Defendant. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Cynthia J. Ayers, Judge
Cause No. 49D04-1205-PL-18087

**September 24, 2014**

**OPINION - FOR PUBLICATION**

**BROWN, Judge**

Albert L. Hauck and Mark Wood appeal the trial court's order granting summary judgment in favor of the City of Indianapolis (the "City"). Hauck and Wood raise three issues, which we revise and restate as whether the court erred in entering summary judgment in favor of the City and against them. We affirm.

FACTS AND PROCEDURAL HISTORY

In 2006, the Indianapolis Metropolitan Police Department (the "IMPD") was created as the result of the consolidation of the Indianapolis Police Department (the "IPD") and the Marion County Sheriff's Department (the "MCSD"). At the time of the consolidation, there were approximately 1,235 IPD officers and 398 MCSD deputies. Hauck and Wood were former MCSD deputies and are now IMPD officers.

The Revised Code of the Consolidated City and County Indianapolis/Marion, Indiana, Title I, Chapter 279, governs the IMPD. Revised Code § 279-103(f) provides:

> The chief,[1] with the approval of the director of the department of public safety, shall endeavor to assign and maintain members of the department in a manner to achieve the goal of proportional representation of former police officers and sheriff's deputies throughout the divisions and appointed ranks of the department, including disciplinary board of captains appointments provided in subsection 279-237(j), through December 31, 2010.

Revised Code § 279-104(b) provides:

> For the period from January 1, 2007, through December 31, 2010, the chief, with the approval of the merit board, shall endeavor to promote members of the department in a manner to achieve the goal of proportional representation of former police officers and sheriff's deputies throughout the divisions and appointed ranks of the department.

---

[1] "*Chief* means the Chief of the Indianapolis Metropolitan Police Department . . . ." Revised Code § 279-101.

In 2008, the IMPD conducted a promotional process for the ranks of sergeant, lieutenant, and captain, and Hauck and Wood signed up to participate in the promotional process for the rank of captain. The promotional processes are typically offered every two or three years. As a part of the 2008 promotional process for captain, candidates were assessed upon a number of components which were assigned various weights or points. Candidates for the promotional process for the rank of captain were given an information booklet which described the process, the various components, required reading materials, review and appeals procedures, and the due dates of the testing events. The components of the promotion process included a multiple-choice examination, an oral interview, assessment exercises, writing exercises, time in service, time in rank, education, and military service. The highest possible score for the promotion process was 100 points, and candidates could lose points for prior disciplinary and attendance issues.

On or about July 2, 2008, the 2008 captains promotional list was certified by the IMPD Merit Board. The list contained the names of those persons eligible for promotion to captain. The list included the names of twenty-one candidates who were ranked based upon their total scores, which ranged from 78.82 for the candidate who placed in the first position to 60.35 for the candidate who placed in the twenty-first position. Wood placed in the tenth position on the promotional list with a total score of 69.92, and Hauck placed in the thirteenth position on the list with a total score of 68.48. Of the twenty-one candidates named on the promotional list, four were former members of the MCSD.

3

Hauck and Wood were the highest scoring former MCSD members on the promotional list.[2] The 2008 captains promotional list was to remain in effect for thirty months.

At the request of the Chief of Police and as approved by the merit board, the candidate in the first position on the promotional list was promoted to captain in September 2008, the candidate in the second position on the list was promoted to captain in October 2010, and the candidates in the third, fourth, and fifth positions on the list were promoted to captain in December 2010. Each of the five candidates promoted to captain were former members of the IPD.

As a result of the 2008 promotional process, thirty-seven total promotions were made. During the period from July 2008 through January 2011, no former members of the MCSD were promoted to the rank of captain, one former member of the MCSD was promoted to the rank of lieutenant, and five former members of the MCSD were promoted to the rank of sergeant. The total number of sworn officers holding the rank of captain in the IMPD were thirty in 2008, four of whom were former members of the MCSD; twenty-nine in 2009, four of whom were former members of the MCSD; and thirty-three in 2010, four of whom were former members of the MCSD.

On May 3, 2012, Hauck and Wood filed a complaint which stated that they participated in IMPD's promotional process for the rank of captain in 2008, they were placed on the list with Wood listed in the tenth position and Hauck listed in the thirteenth position, and they were the highest scoring former deputies on the captains list. The complaint alleged that during the period the 2008 list was in effect, the City failed to

---

[2] The other former MCSD candidates whose names appeared on the list were placed in the twentieth and twenty-first places.

4

achieve or maintain proportional representation of former MCSD deputies to former IPD officers, and the City's failure to promote Hauck and Wood to the rank of captain during the period of July 2, 2008 to January 4, 2011 constituted a breach of their employment contract and Revised Code §§ 279-103 and -104. Hauck and Wood requested specific performance and damages including promotions, back pay, and accrued seniority.

On August 26, 2013, the City filed a motion for summary judgment together with designated evidence and a memorandum in support of the motion. On the same day, Hauck and Wood filed a motion for summary judgment as to the issue of liability together with designated evidence and a brief in support of the motion. In its memorandum in support of its motion, the City argued that "[t]he City-County Council clearly intended to give the Chief of Police discretion to make promotions as he sees fit, and its language that the Chief 'shall endeavor' (i.e., try) is not a mandate that the Chief must skip other candidates to promote former Marion County Sheriff's deputies." Appellants' Appendix at 160. The City further argued that, "[i]f the Court accepts [Hauck and Wood's] interpretation of Section 279-104(b), the Court will be forced to omit the legislature's inclusion of the word 'endeavor.'" Id. at 174. In their memorandum in support of their summary judgment motion, Hauck and Wood argued that the City-County Council expressed a clear intent to require the newly formed IMPD "to endeavor to achieve proportional representation of 25% of former MCSD deputies and 75% of former IPD officers throughout the appointed ranks of the IMPD" and "to do so from the period of January 1, 2007 through December 31, 2010" and that the City and its agents failed to do so. Id. at 17. They also argued that the City "failed to even

5

consider or acknowledge the Revised Code or proportional representation in the 2008-2010 promotional process" and failed to "make any effort whatsoever" to achieve proportional representation. Id. at 18.

Hauck and Wood designated among other evidence the affidavit of Wood stating that he was present at a merit board meeting at which Paul Ciesielski, the Chief of Police for IMPD when four of the five promotions were made from the 2008 captains promotional list, that Chief Ciesielski indicated he was aware of the city ordinance which addressed the issue of proportional representation of former IPD officers and MCSD deputies, that, when asked "if he agreed that the word 'endeavor' meant 'to try really hard,' [Chief] Ciesielski said yes," and that "when asked if he tried really hard to promote members off of the captains list in order to meet the goal of proportional representation of former [MCSD] deputies vs. former IPD officers as set forth in the city ordinance, [Chief] Ciesielski responded 'no.'" Id. at 149. The affidavit further stated that Chief Ciesielski testified that "when he was Chief no one under his command was assigned to monitor the proportional representation of former IPD to former [MCSD] deputies in the ranks of IMPD." Id.

In addition, Michael Spears, a former Chief of Police of IMPD, when asked during a deposition,[3] "did you ever skip over people to grab somebody . . . that ranked lower on the list, to promote them," responded "[y]es," that he did so more than one time, that he thought in "December 2006 on the captains' eligibility list, I promoted, . . . three

_____

[3] The deposition of former Chief Spears was taken in connection with another lawsuit, portions were designated by the City in support of its summary judgment motion, Hauck and Wood filed a motion to submit newly disclosed supplemental evidence of other excerpts of Spears's deposition, and the court granted their motion and ordered that the additional deposition testimony of Chief Spears be admitted into evidence.

candidates out of order" because "[t]hey were African-American candidates" and the department "hadn't had a black male promoted to the rank of captain since 1988 [and they] were also very [] qualified . . . ." Id. at 313-314. When asked "[w]here a person lands on that list, does that necessarily mean they're less qualified . . . for the promotion," Spears testified "I think the answer to that is sometimes it does and sometimes it doesn't," that "[i]t depends on the person" and "their past performance [], the work they've done, the problems that they've had and all those sorts of things," and that "[s]o I'm not sure I could say just yes or no to that." Id. at 316.

On January 22, 2014, the court held a hearing and entered an order which granted the summary judgment motion of the City and denied the summary judgment motion of Hauck and Wood. Under the heading Findings of Fact, the court found that Section 279-102 of the Revised Code provides for the consolidation of the IPD and MCSD, that at the time of the consolidation there were approximately 1,235 IPD officers and 398 MCSD deputies, and that the deputies constituted approximately twenty-five percent of the IMPD officers. Under the heading Conclusions of Law, the court concluded the language of Revised Code §§ 279-103 and -104 was not clear and unambiguous on its face and could be subject to at least two interpretations which therefore require the court to determine legislative intent. The court further concluded:

> The crucial terms to be interpreted in both sections are the words "shall endeavor". The parties disagreed on whether that language was discretionary or mandatory. Ordinarily, the word "shall" means "will" and the words are used in a mandatory sense. The word "endeavor" generally means to "attempt", "make an effort", "to strive", or "to try" to do or "affect" something. An apparent misperception lies in the addition of the word "shall" in front of the word "endeavor". On one hand, if the word "shall" had been used alone, the sentence construction would have

7

*compelled* a certain course of action by the Chief. On the other hand, if the word "endeavor["] had been used alone; the sentence would have been interpreted to mean that the actor must only *try* to achieve a particular goal. However, the sentence contains both words used in conjunction with one another. Thus, adding the auxiliary verb "shall" to the word "endeavor", in the same sentence, did not automatically make the actions by the Chief (proportional promotions) any more imperative and or certain. Consequently, the word "shall" has no real effect on the actions taken by the Chief, other than for him to make a serious attempt at representative promotions, and sets no objective standards for measurement of the outcome of the promotional process.

Id. at 11. Finally, the court concluded:

Therefore, the use of the terms "shall endeavor", in this manner, dictated no compulsory scheme of promotions when the Chief made advancement decisions for members of the department. The language of Section 279-104(b), interpreted plainly, gives the Chief of Police discretion and requires only that he attempt to make representational promotions of former police officers and sheriff's deputies. The final outcome of the promotional process did not, necessarily, demonstrate that no effort was made by the Chief to carry out the intent of the ordinance. Accordingly, summary judgment should be granted for the [City].

Id. at 12.

## DISCUSSION

The issue is whether the trial court erred in entering summary judgment in favor of the City and against Hauck and Wood. Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); Mangold ex rel. Mangold v. Ind. Dep't of Natural Resources, 756 N.E.2d 970, 973 (Ind. 2001). All facts and reasonable inferences drawn from those facts are construed in favor of the nonmovant. Mangold, 756 N.E.2d at 973. Our review of a summary judgment motion is limited to those materials designated to the trial court. Id. In reviewing a trial court's ruling on a motion for summary judgment, we

8

may affirm on any grounds supported by the Indiana Trial Rule 56 materials. Catt v. Bd. of Comm'rs of Knox Cnty., 779 N.E.2d 1, 3 (Ind. 2002). The entry of specific findings and conclusions does not alter the nature of a summary judgment which is a judgment entered when there are no genuine issues of material fact to be resolved. Rice v. Strunk, 670 N.E.2d 1280, 1283 (Ind. 1996). In the summary judgment context, we are not bound by the trial court's specific findings of fact and conclusions of law. Id. They merely aid our review by providing us with a statement of reasons for the trial court's actions. Id. We review a summary judgment order *de novo*. Bules v. Marshall Cnty., 920 N.E.2d 247, 250 (Ind. 2010). The fact that the parties make cross-motions for summary judgment does not alter our standard of review. Sterling Commercial Credit-Mich., LLC v. Hammert's Iron Works, Inc., 998 N.E.2d 752, 756 (Ind. Ct. App. 2013). Instead, we must consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law. Id.

Hauck and Wood argue that the undisputed facts indicate that the City made no effort whatsoever to effectuate the goal of proportional representation. They argue that the City-County Council provided plain, unambiguous language in the Revised Code directing the method, manner, and duration of the proposed measures regarding consolidation and the duties of the IMPD and the Chief of Police. Hauck and Wood further maintain that, "[c]ontrary to the City's numerous assertions in its briefing on summary judgment, [they] did not ask the trial court and do not ask this Court to ignore, omit, or in any way diminish the importance of the word 'endeavor' . . . ." Appellants' Brief at 13. Hauck and Wood contend that "a government actor subject to the legislative

9

directive of 'shall endeavor' must exert oneself to do or attempt something, . . . [i]n other words, make a good faith effort to effectuate the legislative directive." Id. at 14.

Hauck and Wood further state: "In the case at bar, [they] were the highest ranking former MCSD deputies on the 2008 captains promotional list and the proportion of former MCSD deputies at the rank of captain was well below the required proportional representation (12-14% rather than 25%)." Id. They argue that the City in no way tried or endeavored to promote officers in furtherance of the Revised Code's goal of proportional representation, that the "durational language of the ordinance, i.e. between January 1, 2007 and December 31, 2010, demonstrates the Council's intent to create a binding ordinance," and that "the factors used to generate the promotional list for captain—a written test, oral interviews, assessment exercises, writing exercises, time in service (seniority), time in rank as Lieutenant, education, and military experience" did not "include or consider in any way promotional candidates' status as former MCSD deputies or the proportional representation of such persons in the IMPD at the time the list was generated." Id. at 16-17. They contend that "[c]onsidering the rank order alone in making promotions did nothing to promote, pursue, or in any way consider proportional representation in the IMPD." Id. at 17.

The City maintains that the Revised Code "required the Chief of Police to try and achieve the goal of proportionate representation of former IPD and MCSD officers in the promoted ranks of the newly merged IMPD, without setting specific restrictions on how a particular promotional policy be adopted." Appellee's Brief at 14. The City argues the word "endeavor" does not create a right to a necessary outcome or result. And, the City

contends, according to Hauck and Wood, the Chief was required to deviate from the standard promotional policy whenever the representation of former IPD officers and MCSD deputies "falls outside a 3-1 ratio" in order to return the balance of former IPD officers and MCSD deputies to that ratio. Id. at 15. The City further argues the Revised Code "affected the nature of the promotional policy within IMPD as a whole, not merely in specific instances where the balance tipped one way or the other" and that "[t]he Chief was therefore required to develop a general promotional policy whereby he endeavored to achieve the goal of proportional representation." Id. at 16. The City maintains that, had the Council intended the Chief to adopt a specific promotional policy, it would have described or set forth that policy in the language of the ordinance and that, by omitting any such language, the Council left the specific design of the promotional policy to the Chief's discretion. The City asserts that the "promotions [of Hauck and Wood] would have required the Chief of Police to skip over at least six other more qualified candidates." Id. at 18-19.

In addition, the City contends that "[a] better interpretation of the ordinances, as set forth and adopted by the City, is that the Chief of Police was required to use his discretion to develop a non-discriminatory promotional policy where all candidates were given an equal opportunity for advancement, irrespective of their pre-merger employment status, and where possible and practical, promote former MCSD deputies." Id. at 19. The City further maintains:

> The Chief of Police was required, by ordinance, to refrain from any form of favoritism or discrimination on the basis of an officer's former employer so that every officer would have an equal opportunity for advancement and neither group would be able to force their own people into the upper ranks

11

of the IMPD, thus garnering additional power or leverage over the other during the transitional period.

> To carry out the intent of the council, Chiefs Spears and Ciesielski, with the approval of the Merit Board, developed a promotional process where individual officers would be promoted on the basis of their experience, education, disciplinary record, seniority, and performance on uniformly administered written exams and oral assignments. Candidates were selected for promotion based on their qualifications and were in no way discriminated against on the basis of their pre-merger employer.

Id. at 20. The City also notes that "Hauck and Wood . . . are not alleging they were treated unfairly during the promotional process . . . . Instead, [they] contend that regardless of the fact of where they finished on the promotional list, they should have *per se* been promoted due to their status as former MCSD deputies." Id. at 20 n.1. The City also maintains Hauck and Wood were given the same opportunity to be promoted to the rank of captain as every other officer and that, if the City had been "politicking," it would have skipped over the more qualified candidates "because prior to the merger, they were employed by IPD." Id. at 22.

In their reply brief, Hauck and Wood argue that they "met their burden to present prima facie evidence demonstrating a failure to endeavor," that the "burden then shifted to the City to contest or provide evidence to the contrary," and that "[t]he City failed to contest or offer any evidence in opposition to the statements by former IMPD Chiefs Ciesielski and Spears in the summary judgment proceedings before the trial court." Appellants' Reply Brief at 3. They also argue that no specific promotional policy was mandated by the Revised Code, but the Revised Code "demanded a good faith effort to endeavor, which the City failed to undertake." Id. at 4. Hauck and Wood further argue that, "by the City's reading of the Revised Code, the City can take no affirmative action

12

whatsoever, so long as the promotional process that is pursued was uniform and neutral," that "[e]ssentially, the City presents no evidence at all to show that it endeavored to promote pursuant to the ordinance or even considered the ordinance," that "[d]espite the ample evidence presented by [them], the City relies on the absence of evidence to support its position," that "[t]he term endeavor requires affirmative action," and that "[a] neutral employment policy with no due consideration or attempt to follow the Revised Code simply cannot be sufficient as a matter of law." Id. at 9-10.

"When asked to interpret an ordinance, this court will apply the same principles as those employed for the construction of statutes." Hamby v. Bd. of Zoning Appeals of Area Plan Comm'n of Warrick Cnty., 932 N.E.2d 1251, 1254 (Ind. Ct. App. 2010) (citing 600 Land, Inc. v. Metro. Bd. of Zoning Appeals of Marion Cnty., 889 N.E.2d 305, 309 (Ind. 2008) (quoting T.W. Thom Constr., Inc. v. City of Jeffersonville, 721 N.E.2d 319, 324 (Ind. Ct. App. 1999))), reh'g denied, trans. denied. The interpretation of an ordinance is a question of law to which this court owes the trial court's holding no deference. City of Jeffersonville, 721 N.E.2d at 324. The cardinal rule of statutory construction is to ascertain the intent of the drafter by giving effect to the ordinary and plain meaning of the language used. Id. Thus, we are not at liberty to construe a statute that is unambiguous. Id. Where possible, every word must be given effect and meaning, and no part is to be held meaningless if it can be reconciled with the rest of the statute. Id. If a statute is susceptible to multiple interpretations, we must try to ascertain the legislature's intent and interpret the statute so as to effectuate that intent. Cook v. Atlanta, Ind. Town Council, 956 N.E.2d 1176, 1178 (Ind. Ct. App. 2011), reh'g denied,

13

trans. denied. We presume the legislature intended logical application of the language used in the statute, so as to avoid unjust or absurd results. Id. In addition, we will avoid an interpretation that renders any part of the statute meaningless or superfluous. Id. (citing City of N. Vernon v. Jennings Nw. Reg'l Utilities, 829 N.E.2d 1, 4-5 (Ind. 2005) (explaining that the Court will avoid interpretations that render part of a statute meaningless, bring about an absurd result, or create an illogical application)).

Revised Code § 279-103(f) provided in part that "[t]he chief . . . shall endeavor to assign and maintain members of the department in a manner to achieve the goal of proportional representation of former police officers and sheriff's deputies throughout the . . . appointed ranks of the department . . . through December 31, 2010." (Emphasis added). Revised Code § 279-104(b) provided in part that, "[f]or the period from January 1, 2007, through December 31, 2010, the chief . . . shall endeavor to promote members of the department in a manner to achieve the goal of proportional representation of former police officers and sheriff's deputies throughout the . . . appointed ranks of the department." (Emphasis added).

In City of Indianapolis v. Ingram, this court addressed a statute which, in establishing the police merit board, provided in part that "[t]he director *shall endeavor* to appoint to the merit board one (1) experienced person from each of the following fields . . . ." 176 Ind. App. 645, 656, 377 N.E.2d 877, 883 (1978) (emphasis added). This court noted that "[t]he term 'shall endeavor' is not a term of art," that "[o]rdinarily the term 'shall' in a statute is used in a mandatory sense," and that "[h]ad the legislature intended the language to be merely directory a more descriptive word could have been used, like

14

'may.'" 377 N.E.2d at 884. We also noted that "[e]ndeavor" was defined to mean "to exert oneself to do or effect something; to make an effort; strive; (2) to attempt; try." Id. We concluded: "Therefore, we believe the phrase could reasonably be read to mean, "The director shall try to appoint . . . ." Id.

The record reveals that Wood placed in the tenth position and Hauck placed in the thirteenth position on the 2008 promotional list for captain, that they were the highest scoring former MCSD deputies on the list, and that the candidates in the first through fifth positions on the list were promoted to captain from 2008 and 2010. While Chief Ciesielski indicated at a meeting, according to the affidavit of Wood, that he did not try "really hard" to promote members off of the captain's list in order to meet the goal of proportional representation, Appellants' Appendix at 149, the designated evidence includes information regarding the criteria and components used to generate the 2008 promotional list for captain and assess or score the candidates. According to the informational booklet in the record, a certain number of points were assigned to the various components of the promotion process; for example, the multiple-choice examination was worth thirty-five points, the oral interview was worth fifteen points, and the assessment exercises were worth twenty-five points. In addition to the various listed components, candidates could lose up to eight points for prior discipline and up to five points for prior attendance issues. The booklet described in detail how a candidate could obtain points for education based on earned college credit hours and points for years of service and time in rank. The criteria and components of the scoring process provided equal opportunity for advancement. Had the scores been equal or close to equal between

15

a candidate who was a former IPD member and a candidate who was a former MCSD member, the language of the ordinance may have required that the candidate who was a former MCSD member be given the promotion. However, Wood placed in the tenth position and Hauck placed in the thirteenth position in the promotional process. To have overlooked the higher-scoring candidates would have shown a favoritism not contemplated by the ordinance.

Moreover, even if it were shown that the City did not endeavor to maintain proportionality in this case, Hauck and Wood cannot show damages or prevail given the total number of former MCSD members holding the rank of captain following the challenged promotions. The record shows that, prior to the promotions based on the 2008 captains list, approximately 13.3 percent of the total IMPD members holding the rank of captain were former MCSD members, and following the promotions, approximately 12.1 percent of the total IMPD captains were former MCSD members, which is just 1.2 percent less than the pre-promotion percentage.[4] In addition, of the thirty-seven total promotions made within the IMPD to the ranks of sergeant, lieutenant, and captain during this time period, approximately 16.2 percent of the promotions were awarded to former MCSD members.[5] Hauck and Wood cannot show, given the 1.2 percent difference between the percentage of captains who were former MCSD members prior to the promotions and that percentage following the promotions, that the City failed to maintain

---

[4] The total number of members holding the rank of captain in the IMPD were thirty in 2008, four of whom were former members of the MCSD, and thirty-three in 2010, four of whom were former members of the MCSD.

[5] Of the thirty-seven total promotions, one former MCSD member was promoted to lieutenant and five former MCSD members were promoted to sergeant.

proportional representation of former MCSD and IPD members throughout the divisions and appointed ranks of the IMPD.

As the trial court determined, the word "endeavor" as used in the ordinance is to be given its plain and ordinary meaning, that is to "attempt to" or "try to." Appellant's Appendix at 12. Based on the record, the City demonstrated that the IMPD Chief of Police endeavored to promote members in a manner to achieve proportional representation of former IPD and MCSD members, and Hauck and Wood cannot establish that the City failed to maintain proportional representation of former MCSD and IPD members throughout the divisions and appointed ranks of IMPD as contemplated by Revised Code §§ 279-103(f) and -104(b). Accordingly, we do not disturb the trial court's rulings on the parties' summary judgment motions.

CONCLUSION

For the foregoing reasons, we affirm the trial court's entry of summary judgment in favor of the City and against Hauck and Wood.

Affirmed.

BARNES, J., and BRADFORD, J., concur.

17